Karen **HARPER**, et al., Plaintiffs,

v.

**ELI LILLY AND COMPANY,**
**Defendants.**

No. C79–2094.

United States District Court,
N.D. Ohio, E.D.

Nov. 15, 1983.

Thomas L. Dettelbach, Kahn, Kleinman, Yanowitz & Arnson, L.P.A., Cleveland, Ohio, for plaintiffs.

Marc L. Swartzbaugh, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Lane D. Bauer, Leo P. Dreyer, Shook, Hardy & Bacon, Kansas City, Mo., for defendants.

MEMORANDUM OPINION
AND ORDER

BATTISTI, Chief Judge.

This matter is before the Court today on defendant Eli Lilly and Company's Motion for Summary Judgment. Under F.R.C.P. 56, the Court must view the evidence in the light most favorable to the party opposing the motion and may not grant summary judgment unless the movant has conclusively shown that no genuine issue of material fact exists. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974). For the reasons listed below, the Court denies defendant's motion for summary judgment.

I.

During her pregnancies with plaintiffs in 1951 and 1955, plaintiffs' mother, Mrs. Jane Harper, was prescribed diethylstibestrol (DES), a synthetic estrogen manufactured and marketed by defendant for the prevention of miscarriage during pregnancy. Plaintiffs, citizens of New York and Ohio, allege that as a result of their mother's ingestion of DES they have suffered

myriad physical injuries and abnormalities and bring this diversity suit against defendant, a citizen of Indiana with its principal place of business in Indiana, whom plaintiffs allege manufactured and marketed the DES taken by their mother. In moving for summary judgment, defendants claim that plaintiffs' suit is barred by the relevant Ohio statute of limitations, Ohio Rev. Code § 2305.10 (1978), which limits the time in which an action for bodily injury may be brought to two years after the cause thereof arose. The determination of whether plaintiffs' claims are timely requires that the Court undertake a careful evaluation of the facts surrounding this matter and of Ohio law considering "discovery rule" exceptions to the Ohio limitations statute at issue in this case.

A. DES was first produced in 1938. After 1945 it was frequently prescribed to women in the United States to prevent against possible miscarriage. It has been estimated that between four and six million Americans, mothers and their children, were exposed to DES during pregnancy. In 1970 a study revealed the existence of a rare cancer, clear cell adenocarinoma, in seven females aged fourteen to twenty two. These seven cases were greater in number than the number of all previously reported cases of the disease. A follow-up epidemiologic study in 1971 of the seven cases, in addition to an eighth case subsequently reported, revealed that the mothers of seven of the eight females had been treated with DES during their pregnancies. Later studies showed a relationship between the risk of carcinoma and intrauterine exposure to DES. The study also noted a relationship between such interuterine exposure and other abnormal vaginal conditions, including adenosis, a precancerous epithelial infirmity, and cervical ridges or hoods, abnormal formations of the tissues of the cervix. See Scully, R.E., Robboy, S.J., Herbst, A.L.: Vaginal and Cervical Abnormalities, including Clear-Cell Adenocarcinoma, Related to Prenatal Exposure to Stilbestrol. Annals of Clinical and Laboratory Science 4:222 (1974); Information for Physicians, DES Exposure *In Utero*, DHEW Publication No. (NIH) 77–1119 [1977]. Based on such studies, the Food and Drug Administration contraindicated the use of DES during pregnancy in November 1971.

B. *Karen Harper:* Plaintiff Karen Harper Lundquist[1] was born on August 3, 1951. During her teenage years she suffered occasionally from vaginal infections, irritations, and discharges but sought no treatment until 1974. Starting in 1974, she was diagnosed at Planned Parenthood in Cleveland as having trichomona, an infection caused by a protozoan, and was treated at Metropolitan Hospital Center in New York, New York for the condition. She continued to experience vaginal and urinary infections and irritations over the next few years, being prescribed creams and drugs for the conditions each time she sought medical attention. When she experienced severe pain in her pelvic region in September 1977, she sought additional medical attention and was given similar drugs and treatment. At this time, Karen Harper had never been given an opinion of the cause of her problems by any of the physicians whom she had visited.

When plaintiffs Karen and Cynthia Harper were home for the Christmas holidays at their parents in December of 1977, Jane Harper informed plaintiffs for the first time that she had taken DES during their pregnancies. Mrs. Harper told her daughters that she had been reading of the problems of DES daughters and felt that they should be aware of their intrauterine exposure to DES.

In May 1978, plaintiff Karen Harper visited the Cytology Clinic at Metropolitan Hospital and was told that she had a lesion on her cervix and that her cervix was disformed. As plaintiff by this time knew of her intrauterine exposure to DES, she informed the personnel at the Clinic of the fact, and was informed that her condition

---

**1.** Karen Harper married subsequent to the initiation of this suit. She will be referred to throughout this opinion as either Karen, Karen Harper, or Karen Harper Lundquist.

probably resulted from the DES exposure. The Clinic suggested a larger biopsy and possible surgery for plaintiff's condition. Thereafter, plaintiff visited Dr. Bud Wentz in Cleveland, Ohio on June 2, 1978 for a second opinion.

During Karen's visit to Dr. Wentz, Dr. Wentz diagnosed her condition as adenosis. Dr. Wentz also connected plaintiff's problem with her intrauterine exposure to DES. He described adenosis as a condition altering the mucous-secreting tissues of the vagina and opined that plaintiff's vaginal discharges over the prior years were caused by the adenonsis.

*Cynthia Harper:* Plaintiff Cynthia Harper was born on April 6, 1955. She experienced an initial vaginal discharge in 1961 and then beginning in the summer of 1973 experienced recurrent discharges. She sought medical treatment for her problems and was given various vaginal suppositories. The discharges and irritations continued sporadically throughout the following years and she sought recurrent treatment, both in Cleveland and in Athens, Ohio, where Cynthia was a student attending Ohio University.

No medical authority ever diagnosed Cynthia as having adenosis or related her problems to her exposure to DES. At Ohio University Health Service in February 1974, Cynthia was diagnosed as having cervical erosion and slight redness in her cervical area. Cynthia related being told of such problems, but not of any medical opinion as to their causation.

Cynthia's first knowledge of her exposure to DES came over the Christmas holidays in 1977 in a discussion with her mother, which has been previously detailed. She visited several doctors in 1978 for her recurrent vaginal problems, including one Dr. John Sanders. Dr. Sanders was Jane Harper's physician during her pregnancies and the individual who originally prescribed DES to Mrs. Harper, and it was he who later suggested to Mrs. Harper that she tell her daughters of their intrauterine exposure to DES. She was not given a definite diagnosis of adenosis caused by intra-

uterine exposure until 1979, when she also visited Dr. Bud Wentz.

## II.

This suit was filed by plaintiffs Karen and Cynthia Harper on November 7, 1979. Therefore, the Court must now ascertain the relevant Ohio rule governing the application of the statute of limitation in this case. In this diversity suit, we sit as a court in Ohio and apply the law that an Ohio State court would, *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although no Ohio court has spoken to the proper application of the discovery rule in suits involving DES, the Supreme Court of Ohio has recently delivered opinions concerning the propriety of adopting a discovery rule in latent disease and injury cases. Based on those cases, the Court concludes that use of the Ohio discovery rule prevents the finding that plaintiffs' claims are time-barred.

A. Discovery rules, under which a party's claim is said not to accrue until a time when a plaintiff has an actual legal claim for relief, have been increasingly adopted by courts faced with suits claiming injury from latent diseases. Where a party has allegedly been injured by a product whose toxicity has not produced any ascertainable injury simultaneous to its contact with the plaintiff, the courts have allowed plaintiffs to initiate suit at the time when the plaintiff later experiences a medically and legally cognizable injury. The policy behind discovery rules are then adapted to different factual settings as they arise, balanced against the countervailing policies of repose that prompted the use of limitation periods in the first place. Although different states' courts have seen it proper to limit claims at different times, a general progression has been described by one court as follows:

> When the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered.

Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing.

*Dawson v. Eli Lilly and Company*, 543 F.Supp. 1330, 1338 (D.D.C.1982); *accord O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727, 730–731 (1983).

For states adopting a discovery rule, the two major variants are a rule tying accrual of a claim to the manifestation of a latent disease or injury, *see Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151 (6th Cir.1981), and a rule tying accrual to the discovery of both the latent disease or injury and of the relationship between such disease and its cause, see *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (D.N.H.1977). A "manifestation" rule identifies the commencement of the limitations period "at the time the diseases manifested.... [A] disease is manifested at the time there is an outward, perceptible sign of the disease and not at the time that the cause of the disease has, or reasonably should have been, discovered." *Johnson v. Koppers Co.*, 524 F.Supp. 1182, 1191 (N.D. Ohio 1981). A discovery rule tied to causation, on the other hand, links the commencement of the limitations period to the date when the plaintiff learns, or should have learned, that his or her injury is not simply misfortune but rather the result of an undisclosed defect in defendant's product. *Dawson v. Eli Lilly and Company*, 543 F.Supp. 1330, 1337 (D.D.C.1982); *see also Renfroe v. Eli Lilly & Co.*, 541 F.Supp. 805, 810 (E.D.Mo.), *aff'd* 686 F.2d 642 (8th Cir.1982); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977). The latter cases reason that a plaintiff cannot be reasonably expected to ascertain the cause of the many developing latent diseases on his or her own and that accrual should therefore not begin until a plaintiff has had time to seek and obtain professional medical diagnosis. *See, e.g., Fusco v. Johns-Manville Prods. Co.*, 643 F.2d 1181 (5th Cir.1981); *Aerojet-General Shipyards, Inc. v. O'Keefe*, 413 F.2d 793 (5th Cir.1969);

*Velasquez v. Fireboard Paper Prods.*, 97 Cal.App.3d 881, 159 Cal.Rptr. 113 (Ct.App. 1979). *See also O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 713–20 (3d Cir.1981) (Higginbotham, J. dissenting).

The distinctions between discovery rules tied to manifestation and causation at times mandate different results. At other times, however, the differences in the cases, when reviewed against their specific facts, reveal only differences in semantics. This result is in part due to the difficulty, if not outright impossibility, in defining an exact date when an "injury" is either "manifested" or "discovered" in diseases involving long periods of latency and development. Thus, a court may be faced with distinguishing an unidentified and recurring cough or pain from a more permanent shortness of breath or injury as a disease progresses through biological and chemical periods to a full-fledged disability. As will be shown later, many courts when faced with the task of identifying a specific date of manifestation of injury have adopted dates more closely identified with discovery of significant injury or causation. Before the Court progresses to a discussion of these cases, however, it is necessary to state the Ohio discovery rule which will be applied to this matter.

B. Recently, the Supreme Court of Ohio has pronounced extensions in discovery rules in both latent disease and medical malpractice claims. *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983); *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). These extensions have come on top of other changes in law concerning accrual of causes of action. Prior to 1972, the Ohio courts appeared to espouse a strict rule of accrual, holding generally that a cause of action accrued on the date of the act or omission causing injury, even if the injury was not contemporaneous with the act or omission. In 1972, however, the Supreme Court of Ohio held that where a surgeon negligently left foreign objects in a patient's body causing injury, that the cause of action against the doctor did not

accrue until the patient discovered, or by the exercise of reasonable diligence should have discovered, the negligent act. *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 290 N.E.2d 916 (1972). The rule required both the discovery of the foreign object and the cause thereof.

The first courts to deal with limitation periods for latent disease cases in Ohio were the federal courts sitting in diversity. In 1981, the Sixth Circuit, applying what they considered to be an accurate expression of Ohio law, held that in an action brought by a plaintiff suffering from asbestosis the cause of action accrued when the disease became manifested. *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151 (6th Cir.1981). The Court defined manifestation as the time when "some symptoms are present and one could have discovered the injury had one made an appropriate investigation as to the cause even though the symptoms were not such that a reasonable person would have investigated the cause." *Id.* at 1154. Therefore, the Court held that plaintiffs, whose last exposure to asbestos-containing products was many years before they received diagnosis of asbestos-related diseases, had timely brought their suits within two years of their respective diagnoses.

Earlier this year, the Supreme Court of Ohio faced the issue of accrual in cases concerning latent diseases. In *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983), the Supreme Court of Ohio went beyond the rule espoused in *Clutter* and held in a case involving asbestosis that a cause of action arose "upon the date when the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first". *O'Stricker*, 4 Ohio St.3d at 90, 447 N.E.2d at 732.[2]

In *O'Stricker*, plaintiff noticed shortness of breath, loss of balance, difficulty in swallowing and hoarseness sometime prior to November 1978. Upon consulting a physician, he learned of the possible relationship between his illness and his work as a fireproofer, which had caused him to come into contact with asbestos. In June 1979 a biopsy diagnosed plaintiff as suffering from squamous cell cancer of the larynx, for which surgery was undertaken in December 1979. Plaintiff filed suit in August 1979.

In its opinion, the Supreme Court of Ohio noted the opposing concerns addressed in discovery rules and in statutes of limitations and chronicled the evolution of discovery rules in other states. In considering the development of discovery rules in other states the Court found persuasive the reasoning in many cases that adopted a rule expressed in terms of both discovery of injury and of the cause of the injury. Specifically, the Court cited with approval *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977), where the Supreme Court of New Hampshire held that a cause of action for a drug-related injury did not accrue until plaintiff knew she was injured and also knew that her injury may have been caused by defendant's conduct.[3] The

---

**2.** The syllabus of the *O'Stricker* court defined accrual in latent disease cases by stating "When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10." Under the Ohio syllabus rule, the syllabus, when considered against the fact of the case, states the law of the case. Supreme Court Rules for the Reporting of Opinions, Rule 1(B) (1983). See also *Supanick v. Supanick*, 66 Ohio St.2d 360, 421 N.E.2d 1301 (1981); *Glinsey v. Baltimore & Ohio Ry. Co.*, 495 F.2d 565, (6th Cir.1974), *cert. denied*, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974).

**3.** In *Raymond*, the plaintiff experienced blurriness in 1968 while taking defendant's oral contraceptive. She was then advised to stop taking the drugs as a precaution. She then visited an eye clinic in 1969, where a report on her condition noted the cause as "unknown." In 1970 she read a newspaper article which identified a connection between her condition and side effects of oral contraceptives. Plaintiff did not file her suit, however, until 1975.

In holding that her suit was timely filed under the state's six-year limitations statute, the Su-

Court, after finding the equities to call for the introduction of a discovery rule, found that latent diseases were analogous to the hidden instruments involved in *Melnyk* and called for a similar discovery rule requiring both discovery of the disease and the cause thereof. 4 Ohio St.3d at 90, 447 N.E.2d at 732. The Court then went on to hold that plaintiff's suit was filed within the relevant two years limitation period.[4]

### III.

Thus, the relevant rule to be applied to plaintiffs Karen and Cynthia Harper's claims is whether they knew or should have known that they were injured by a defect in defendant's product prior to November 7, 1977. In stating that plaintiffs' claims did indeed accrue before that time, defendant points to the recurrent vaginal discharges and infections suffered by the plaintiffs prior to 1977 that plaintiffs allege were caused by their intrauterine exposure to DES. Arguing that the plaintiffs were aware of their injuries prior to 1977, even though their injuries were not diagnosed as adenosis or ascribed by medical authority as being caused by DES, defendant alleges that the claims are barred.

Defendant's argument misses the Supreme Court of Ohio's concerns in *O'Stricker* where the court spoke of a two-part rule requiring both discovery of the injury and the cause thereof. In this case although plaintiffs were aware of nonspecific symptoms in the years prior to 1977, when they sought and obtained treatment for their conditions, the medical authorities were unable to give their opinion as to the causes. This is not a case where a party should have, but did not, consult with medical help for an unknown condition where prompt medical attention would have resulted in proper diagnosis. Furthermore, plaintiffs did not even know that they had been exposed in utero to DES until the Christmas holidays in 1977. Any result other than the one reached today would require the plaintiffs to have initiated suit at a point when competent medical help could not diagnose their illnesses and when they were, without fault, unaware of their exposure to DES. Such a result would be diametrically opposed to the concerns and result in *O'Stricker*, where the plaintiffs knew they had been earlier exposed to asbestos and where the medical knowledge of asbestos-related diseases was greater than that surrounding DES. The Court cannot and will not put such an impossible burden on the plaintiffs.

Furthermore, the Court notes that, on the facts presented, it would be unable to hold on a motion for summary judgment that plaintiffs' claim would have been untimely under the manifestation rule announced in *Clutter*, now effectively overruled by *O'Stricker*. In *Donlin v. Abbott Laboratories*, C81–1385Y (N.D.Ohio, March 1, 1983), ruled on before the Su-

---

preme Court of New Hampshire described the proper concerns in fashioning a discovery rule in like cases. "In a case, such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule means. We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of the courts: A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he had been injured but also that his injury may have been caused by the defendant's conduct." 370 A.2d at 174.

**4.** The Supreme Court of Ohio also recently extended the limitations period in the medical malpractice area. *Oliver v. Kaiser Community Health Found,* 5 Ohio St.3d 111, 449 N.E.2d 438 (1983). In *Oliver*, the Court noted that the extension of a discovery rule to the medical malpractice field was consistent with other recent holdings of the Court finding that accrual of a cause of action did not commence until a plaintiff suffered identifiable injury at the hands of the defendant. *Kunz v. Buckeye Union Ins. Co.,* 1 Ohio St.3d 79, 437 N.E.2d 1194 (1982); *Velotta v. Leo Petronzio Landscaping, Inc.,* 69 Ohio St.2d 376, 433 N.E.2d 147 (1982). It is not uncommon for a court to extend discovery rules in different situations as they arise. A definition in one case signifies only the equitable resolution of a discovery rule in a specific factual setting rather than a rule meant to cover all other cases as they may arise. *See Dawson v. Eli Lilly and Company,* 543 F.Supp. 1330 (D.D.C. 1982).

 

preme Court of Ohio's decision in *O'Stricker*, Judge Krenzler of this Court held that another DES suit was time-barred under the *Clutter* rule. In *Donlin*, plaintiff experienced pains on her right side in late 1978 and consulted with a physician. In January 1979 the physician noted an ovarian tissue mass. When the mass did not disappear plaintiff had a sonogram performed on July 2, 1979, at which time plaintiff's condition was clearly revealed to her. Plaintiff underwent surgery to remove the ovarian mass later in July 1979 and filed suit on July 8, 1981.

In holding that plaintiff's condition "manifested" itself prior to July 8, 1979, the Court held that for purposes of the statute of limitations the condition became manifest no later than July 2, 1979 when "plaintiff's uterine condition had been sufficiently revealed by subjective symptomology and objective verification so that ... there was an awareness by plaintiff and one of her treating physicians that an abnormal mass was present". The Court noted that the probable date of manifestation might have been as early as January 1979, when plaintiff's physician ascribed to her the discovery of an ovarian mass.

The *Donlin* case, however, is important for the purposes of this case for what it did not hold, namely that plaintiff's pains in late 1978 were not sufficient to equal "manifestation" of her injury.[5] Thus, it follows that Karen and Cynthia Harper's nonspecific ailments prior to 1977, for which medical personnel could opine no cause, cannot be used as the date of discovery of "injury." To do so would defeat the important policies behind the adoption of a discovery rule, and this the Court refuses to do.

### IV.

Summary judgment is appropriate only where no genuine issue of material fact exists. *New Jersey Life Ins. Co. v. Getz*, 622 F.2d 198 (6th Cir.1980). This Court

cannot agree with defendant that, taking the facts in the light most favorable to plaintiffs, no genuine issue of material fact exists as to whether plaintiffs' claims accrued prior to November 7, 1977. Accordingly, defendant's motion for summary judgment is denied.

IT IS SO ORDERED.

---

**5.** See also *Johnson v. Koppers Co.*, 524 F.Supp. 1182, 1191 (N.D.Ohio 1981), where the Court, using the *Clutter* manifestation rule, held that

the statute of limitation started to run on the date on which plaintiff's disease was first *diagnosed.*