**Betty Young LONGMIRE, Plaintiff,**

v.

**The UPJOHN COMPANY, Defendant.**

**No. C–1–85–1808.**

United States District Court,
S.D. Ohio, W.D.

June 24, 1988.

Stanley M. Chesley, Cincinnati, Ohio, Sybil Shainwald, New York City, for plaintiff.

Frederick J. McGavran, Grant S. Cowan, Cincinnati, Ohio, for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT THE UPJOHN COMPANY

SPIEGEL, District Judge.

This matter came on for consideration of the motion for summary judgment of defendant Upjohn Company (doc. 27), plaintiff's memorandum in opposition (doc. 29), together with affidavits (docs. 30, 31, 32), and defendant's supplemental memorandum (doc. 33), and reply to plaintiff's memorandum (doc. 34).

This action was commenced on November 6, 1985 against the Upjohn Company (Upjohn) alleging that plaintiff was prescribed depo-Provera, a pharmaceutical product manufactured by Upjohn which caused her numerous medical problems. According to the defendant at the time plaintiff's gynocologist prescribed depo-Provera for her, it was a prescription pharmaceutical product produced and marketed by Upjohn in the United States for use in the treatment of habitual and threatened abortion and endometriosis. Plaintiff claims she was prescribed depo-Provera as a contraceptive but defendant contends that Upjohn never recommended manufactured, and produced, sold, marketed or promoted or otherwise placed depo-Provera in distribution in United States for use as a contraceptive.

Be that as it may, plaintiff admits first receiving injections of depo-Provera after the birth of her first child in 1965 which injections continued until April of 1967. She again received injections of depo-Provera from December 1969 until September of 1970. She has not taken them since that time. Plaintiff admits being told by her gynocologist, Dr. Schwarz in 1970 that he had given her too much depo-Provera and that this over prescription may cause her problems. Plaintiff later consulted with two other gynocologists, Dr. Mationlionnes and Dr. Scharinavas, who advised her that her medical problems may be related to depo-Provera.

In January 1983 an article appeared in the *Cleveland Plain Dealer* in which plaintiff was the subject and in which she blamed her medical problems on depo-Provera. The interview was arranged by representatives of the National Womens Health Network, an organization which was spearheading the dissemination of information about depo-Provera. Plaintiff first learned of the Network through an article which described the different symptoms associated with depo-Provera and requested that women who had taken the drug contact the Network. Plaintiff did so in 1981 and informed the Network that she had taken depo-Provera and had experienced all of the symptoms listed in the article. The director of the Network asked her if she would be willing to share her story with a newspaper reporter, which she agreed to do, and the interview appeared in the *Cleveland Plain Dealer* on January 8, 1983. More than two years before the filing of the instant law suit.

This is a diversity action removed to the Federal Court by Upjohn. Under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) we look to the law of Ohio and apply the Ohio two-year statute of limitations to plaintiff's bodily injuries, § 2305.10 Ohio Rev. Code. The Supreme Court of Ohio in *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983) has adopted the following discovery rule for accrual of causes of action under § 2305.10 Ohio Rev. Code:

> When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first.

Defendant argues that under either prong of the above discovery rule, plaintiff's cause of action accrued more than two years before her filing of this suit on November 6, 1985. She was told by three gynocologists in the early 1970s that her alleged medical problems may be related to depo-Provera. Additionally, the newspaper article about the plaintiff demonstrates, that at the very latest, in January of 1983 plaintiff knew that she was injured and

that in her opinion depo-Provera was the cause of her injury. Thus, since this action was filed over two years after the limitations period expired, defendant Upjohn argues it is entitled to summary jury as a matter of law.

In opposition plaintiff points out that she is "plagued with bleeding, prolonged hemorraging, infections, obesity, darkening of the skin, hair loss, Gray's disease, fibroid tumors, iritis, fatty breast deposits, arthritis and depression ... In addition ... [she] was forced to have a hysterectomy in 1974" (doc. 29, p. 2). She contends that at the time she received injections of depo-Provera none of her doctors administering the drugs informed her of possible short term or long term side effects nor did any of the gynocologists inform her "to a degree of medical certainty" that depo-Provera was a cause of her injuries described above. Plaintiff points out that depo-Provera had been used extensively as a contraceptive in over seventy countries and according to Upjohn's statistics one and one-half million women received their first injections over ten years ago. However, the Food and Drug Administration (FDA) refused approval of a supplemental new drug application for depo-Provera for intramuscular injections as a contraceptive agent in humans. Plaintiff points out that in 1978 Upjohn challenged the FDA's decision refusing approval and requested a public board composed of physicians to inquire into depo-Provera's use as a contraceptive. The public board released its findings on October 17, 1984 denying approval:

> The facts related to the long term consequences of the use of the drug are inadequate and insufficient to provide a basis for risk assessment. This is a serious deficiency in light of the specific questions that have been raised that the drug may have major adverse affects following its long term use or that may become evidenced only after a latent period. (Board of Inquiry Report at p. 172, Exh. C).

(doc. 29 at p. 3).

Plaintiff relies upon *Harper v. Eli Lilly & Co.*, 575 F.Supp. 1359 (N.D.Ohio 1983).

However, we think the facts in *Harper* are distinguishable. The Court recognized in *Harper* the difficulty in pinpointing the time when a latent injury claim accrues:

> Where a party has allegedly been injured by a product whose toxicity has not produced any ascertainable injuries simultaneously with its contact with the plaintiff, the courts have allowed plaintiffs to initiate suit at the time when plaintiff's later experiences a medically and legally cognizable injury.

*Harper*, 575 F.Supp. at 1361.

*Harper* involved diethylstibestrol (DES) a synthetic estrogen manufactured and marketed by the defendant. The plaintiffs during their teenage years suffered from vaginal infections, etc. Plaintiffs were treated for various conditions and over the next few years they continued to experience vaginal and urinary infections and irritations. Various creams and drugs were prescribed for her condition each time she sought medical attention. In December of 1977 the mother of the plaintiffs revealed that for the first time she had taken DES during pregnancy. Both female daughters in 1978 experienced severe pain in the pelvic region and sought additional medical attention and treatment. Both daughters, the plaintiffs, over the course of their treatment by various doctors were never advised as to the cause of the problem until Karen was informed in May 1978 by one physician that her condition probably resulted from DES exposure. However, she was not diagnosed nor was her medical condition related to DES until a second opinion was rendered by another physician. The Court acknowledged that plaintiff's conditions were latent diseases relating to DES and applied the discovery rule adopted in *O'Stricker* and denied summary judgment to the defendant reasoning:

> This is not a case where a party should have, but did not, consult with medical help for an unknown condition where prompt medical attention would have resulted in proper diagnosis ... any result other than the one reached today would have required the plaintiffs to have initiated suit at a point when competent medical help could not diagnose her ill-

ness when they were without fault, unaware of their exposure to DES.

Defendant points out that *Harper* involved the latent disease claim and that when plaintiff sought medical treatment the medical authorities were unable to give their opinion as to the possible causes of the injuries and that plaintiffs were not even aware until December of 1977 that their mother had been exposed to DES and not until May of 1978 that they were informed that DES may have caused the injuries. The instant case differs from *Harper* because plaintiff, after she discovered her alleged injuries, was told by three different doctors in the early 1970s that depo-Provera may be the cause. However, plaintiff waited until November 1985 to file a law suit.

Discovery rule announced in *O'Stricker* does not require an expert medical opinion that depo-Provera caused Longmire's injuries. The discovery rule in Ohio requires first that plaintiff know, or should have known, that she has been injured; and second, that she knew or reasonably should have known that her injuries were proximately caused by the conduct of the defendant. *Viock v. Stowe Woodward Co.,* 13 Ohio App.3d 7, 467 N.E.2d 1378 (1983), *citing O'Stricker.* In *Viock,* the Court agreed with the Oregon Supreme Court that a physician's opinion on what could have caused the injury starts the statute running and rejected a contention that "nothing short of a positive diagnosis by a physician" would commence the statute of limitations. It held:

The statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives a role which the defendant has played in inducing that condition.

Since we look to what plaintiff perceived, we find that in the January 8, 1983 newspaper article in the *Plain Dealer,* she was convinced that depo-Provera caused her problems.

The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). We are further guided by the Supreme Court's recent elaboration of this standard in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial ...

477 U.S. at 322, 106 S.Ct. at 2552.

We have carefully reviewed all of the material that has been supplied by the parties and conclude that there is no genuine issue of material fact that plaintiff knew more than two years before filing suit that she had been injured and that her injuries were related to depo-Provera. Plaintiff has admitted in her depositions that for more than two years before the filing of her suit she knew she was suffering a variety of illnesses which she believed were caused by depo-Provera. We agree with the defendant that her affidavit which attempts to contradict her testimony does not create an issue of fact. *See Biechele v. Cedar Point, Inc.,* 747 F.2d 209 (6th Cir. 1984).

For the foregoing reasons we conclude that defendant is entitled to summary judgment of dismissal of this action as a matter of law. It is hereby Ordered that defend-

ant's motion for summary judgment is granted and this action is dismissed.

SO ORDERED.