O'STRICKER ET AL., CO-EXECUTORS, APPELLANTS, *v.* JIM WALTER
CORPORATION ET AL., APPELLEES.

[Cite as O'Stricker *v.* Jim Walter Corp. (1983), 4 Ohio St. 3d 84.]

(No. 82-403—Decided April 13, 1983.)

*Komito, Nurenberg, Plevin, Jacobson, Heller & McCarthy Co., L.P.A., Mr. Maurice L. Heller, Mr. Harlan M. Gordon, Mr. Richard C. Alkire* and *Mr. Thurlow Smoot,* for appellants.

*Hesser, Armstrong, Toomey & Disantis Co., L.P.A., Mr. Richard J. Disantis* and *Mr. William E. Blackie, III,* for appellee W.R. Grace Co.

*Mr. Joseph N. Giamboi,* for appellee Spraycraft Corporation.

*Mr. David Ross,* for appellee Carey Canada, Inc.

*Mr. Frank S. Hurd* and *Mr. Hilary S. Taylor,* for appellee U.S. Mineral Products Co.

*Mr. James L. Malone,* for appellees Celotex Corp. and Panacon Corp.

*Robert E. Sweeney Co., L.P.A., Mr. Robert E. Sweeney* and *Mr. Thomas H. Terry, III,* urging reversal for *amici curiae,* plaintiffs similarly situated.

*Messrs. Jones, Day, Reavis & Pogue, Mr. Thomas P. Mulligan, Mr. Michael A. Nims, Mr. Robert C. Weber, Mr. Peter A. Carfagna* and *Mr.*

*Stephen Q. Giblin,* urging affirmance for *amicus curiae,* Johns-Manville Sales Corp.

CLIFFORD F. BROWN, J. The issue raised for decision by this court is whether plaintiff's action is barred under R.C. 2305.10, the statute of limitations for bodily injury actions. Plaintiff claims his injury (cancer) was caused by exposure to asbestos products mined, manufactured and distributed by defendants.

The past decade has seen an explosion of asbestos-related injury claims against various defendants engaged in asbestos industries. A recent Wall Street Journal article reported that some 16,000 damage suits have been filed and each month 450 additional claims are filed.[3] These claims follow publication of medical research linking asbestos exposure to various forms of cancer, including asbestosis, mesothelioma, lung cancer, and squamous cell carcinoma of the larynx.[4] Asbestos exposure may cause disease many years after inhalation of the fibers. See, *e.g., Bunker* v. *National Gypsum Co.* (Ind. 1982), 441 N.E. 2d 8 (twenty-six years); *Harig* v. *Johns-Manville Products Corp.* (1978), 284 Md. 70, 394 A. 2d 299, 1 A.L.R. 4th 105 (twenty-one years). Given the long latency period of asbestos cancer, statutes of limitations often present formidable roadblocks to prosecution of injury claims.

In the instant case, defendants raise R.C. 2305.10 as a bar to plaintiff's claims. Prior to June 12, 1980, that statute provided:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose."

In 1980, the General Assembly amended that statute by adding the following proviso, effective June 12, 1980:

"For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first."

Plaintiff filed his action prior to the effective date of this amendment to R.C. 2305.10. "It is well settled in other jurisdictions, and it is recognized in Ohio, that the legislature has the power to increase the period of time necessary to constitute a limitation, and also to make it applicable to existing causes of action, provided such change is made before the cause of action is

---

[3] Hertzberg, Asbestos Lawsuits Spur War Among Insurers, With Billions at Stake, Wall Street Journal (June 14, 1982).

[4] Asbestosis is a fibrous condition of the lungs, resulting from scarring of the lung tissue by asbestos fibers. Mesothelioma is a malignant tumor on the lining of the lungs or peritoneum. Squamous cell carcinoma was linked with asbestosis as early as 1948. Cureton, Squamous Cell Carcinoma Occurring in Asbestosis of the Lung, 2 Brit. J. of Cancer 249 (1948). Subsequent studies have linked laryngeal carcinoma to asbestos. Stell & McGill, Asbestos and Laryngeal Carcinoma, 1 Lancet 815 (1973) (cited in 1 Asbestos Litigation Rep. 20, 35 [1979]).

extinguished under the pre-existing statute of limitations." 34 Ohio Jurisprudence 2d 492-493, Limitation of Actions, Section 8. Accordingly, in order to determine whether the legislatively created discovery rule applies to plaintiff's cause of action, we must first determine whether that action was extinguished under the pre-existing statute of limitations. Turning to the unamended statute, we must focus on the language of accrual in the statute. Here, we must determine under unamended R.C. 2305.10 when the cause of action "arose."

No definition of the subject language appears in the statute. Absent legislative definition, it is left to the judiciary to determine when a cause "arose." *Harig* v. *Johns-Manville Products Corp., supra,* at page 75. In general, a cause of action exists from the time the wrongful act was committed. However, in situations such as the case at bar, the application of the general rule "would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence." *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, 168 [54 O.O.2d 283]. In such cases, a cause of action for damages does not arise until actual injury or damage ensues. See *Kunz* v. *Buckeye Union Ins. Co.* (1982), 1 Ohio St. 3d 79 (cause of action against insurer for failure to obtain coverage accrued at date of loss); *Velotta* v. *Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St. 2d 376 [23 O.O.3d 346], paragraph two of the syllabus ("actual injury" rule applied in action for negligence brought by vendee against builder-vendor of completed residence).

In asbestos-cancer cases, most courts which have examined the medical evidence have concluded that bodily injury does not occur contemporaneously with exposure. *Eagle-Picher Industries, Inc.* v. *Liberty Mut. Ins. Co.* (C.A. 1, 1982), 682 F. 2d 12, 19, fn. 3; *Pauley* v. *Combustion Engineering, Inc.* (S.D. W.Va. 1981), 528 F. Supp. 759, 764; *Nolan* v. *Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 788, 392 N.E. 2d 1352, 1360. Compare *Insurance Co. of North America* v. *Forty-Eight Insulations, Inc.* (C.A. 6, 1980), 633 F. 2d 1212.[5] Nevertheless, defendants urge that the general rule should be applied here, so that plaintiff could only pursue his action if it was filed within two years of defendants' last negligent act, *i.e.,* plaintiff's last exposure to defendants' asbestos products.[6]

---

[5] In this declaratory judgment action to determine underlying liability based on language in insurance policies, the court specifically rejected the argument that identical language used in statutes of limitations and insurance policies must necessarily be interpreted identically. In holding insurance contract language covering bodily injury to be activated at exposure, the court noted that policy considerations differ in statute of limitations cases:

"* * * Statutes of limitation are meant to protect defendants against stale claims, nor [*sic*] bar injured plaintiffs who have acted in good faith. Insurance contracts are meant to cover the insured." *Forty-Eight Insulations, Inc., supra,* at page 1220.

[6] Defendants also urge that the 1980 amendment would apply only to actions not already barred by former R.C. 2305.10, using the "last exposure rule." Under this interpretation, only those exposed to asbestos after June 12, 1978 and filing suit after June 12, 1980, could use the "discovery rule" enacted by the General Assembly when it amended R.C. 2305.10. Such

Conversely, plaintiff urges that the cause of action "arose" at the time of injury, *i.e.*, when plaintiff discovered his cancer and the causal relationship to asbestos exposure. This position and its variants are known as the "discovery rule" which has been adopted by a majority of those courts considering the question in the context of asbestos cancer.[7]

A minority of courts has adopted a "manifestation rule" in this context.[8] Finally, a few have adhered to a "last exposure rule" as advocated by defendants.[9]

This court has previously adopted a "discovery rule" in the context of medical malpractice actions arising from claims that surgeons negligently left foreign bodies in their patients causing injury. *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198 [61 O.O.2d 430]. In that instance, this court analyzed the underlying rationale for statutes of limitations in the context presented, and reached a conclusion consistent with those equitable and policy considerations. We can do no less here.

The rationale underlying statutes of limitations is fourfold: to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases. *Harig* v. *Johns-Manville Products Corp.*, *supra*, at page 75. See, generally, 34 Ohio Jurisprudence 2d 487-488, Limitation of Actions, Section 3. With these considerations in mind, the court must weigh the impact on each party of strict accrual (such as the "last exposure rule") with a more liberal policy (such as a "discovery rule").

---

disparate treatment, which we cannot believe was the intent of the General Assembly, is obviated by judicially incorporating a "discovery rule" into the unamended statute of limitations.

[7] *E.G., Neal* v. *Carey Canadian Mines, Ltd.* (E.D. Pa. 1982), 548 F. Supp. 357, 367 (holding with respect to injuries or disease for which the causes are not readily apparent, the cause accrues when plaintiff "either knew or had reason to know of the injury, the operative cause of the injury, and the causal relation between the injury and the operative conduct"); *Staiano* v. *Johns-Manville Corp.* (Pa. Super. 1982), 450 A. 2d 681; *Pauley* v. *Combustion Engineering, Inc., supra* (federal court applied West Virginia law); *In re Johns-Manville Asbestosis Cases* (N.D. Ill. 1981), 511 F. Supp. 1235, 1239 (holding the discovery rule tolls the running of the wrongful death statute of limitations); *Nolan* v. *Johns-Manville, supra; Louisville Trust Co.* v. *Johns-Manville Products Corp.* (Ky. 1979), 580 S.W. 2d 497 (adopting discovery rule for all personal injury actions from a latent disease caused by exposure to a harmful substance); *Harig* v. *Johns-Manville Products Corp., supra; Raymond* v. *Eli Lilly & Co.* (1977), 117 N.H. 164, 371 A. 2d 170. See, generally, Annotation 1 A.L.R. 4th 117, 127, Section 5, When Statute of Limitations Begins to Run as to Cause of Action for Development of Latent Industrial or Occupational Disease.

[8] See, *e.g., Decosse* v. *Armstrong Cork Co.* (Minn. 1982), 319 N.W. 2d 45, 52 (wrongful death actions brought in connection with asbestos-related deaths accrue either upon the manifestation of the fatal disease in a way that is causally linked to asbestos or upon the date of death — whichever is earlier); *Eagle-Picher Industries, Inc.* v. *Liberty Mut. Ins. Co., supra*, 19-20; *Clutter* v. *Johns-Manville Sales Corp.* (C.A. 6, 1981), 646 F. 2d 1151, 1157 (applying Ohio law); *Karjala* v. *Johns-Manville Products Corp.* (C.A. 8, 1975), 523 F. 2d 155, 160.

[9] See, *e.g., Bunker* v. *National Gypsum, supra; Thornton* v. *Roosevelt Hospital* (1979), 47 N.Y. 2d 780, 391 N.E. 2d 1002.

Should this court adopt a "discovery rule," defendants would be faced with an action based on their failure to warn plaintiff of the hazards associated with asbestos use. Such a defense would necessarily rest on documentary evidence of sales of asbestos fireproofing products, the presence or absence of warnings on the products, and the state of knowledge of the dangers of working with asbestos. Such documentary evidence, unlike that requiring the exercise of individuals' memories, does not typically become less reliable over time. Nor would it be unfair to require defendants to collect such documentary evidence, since such records would typically be kept in the ordinary course of business. Conversely, to deny plaintiff an opportunity to pursue his claim, possibly before he knew it existed, would only compound the personal tragedy borne by asbestos workers and their families. As stated by Justice (now Chief Justice) Frank Celebrezze:

"Justice in this case cries out for a remedy. How can anyone be precluded from asserting a claim by a statute of limitations which expires before the discovery of the injury? How can anyone charged with the responsibility of administering justice allow such an absurdity?" *Amer* v. *Akron City Hospital* (1976), 47 Ohio St. 2d 85, 93 [1 O.O.3d 51] (dissenting opinion).

The instant case involves a latent disease with a gestation period of up to thirty years. Concern for fairness to plaintiff strongly supports a "manifestation" or "discovery" rule.

Similarly, prompt prosecution of claims cannot be engendered by a statute of limitations unreasonably short. Rather, such a statute would bar legitimate actions before the injury had manifested itself. Given the likelihood that decades could pass between the last exposure to asbestos and the occurrence of the cancer, we agree with the majority of courts which have considered this issue that prompt prosecution of claims in asbestos-exposure cases can only be fostered by statutes of limitations which do not bar prosecution before the injury arises.

Thirdly, we recognize the danger of stale and fraudulent claims will increase as access to the courts increases. However, we do not find the equities such that the vast majority of valid claims must be sacrificed in the interest of weeding out frivolous ones. Nor do we view the courts or defense counsel as incompetent to expose such cases.

Accordingly, having in view the underlying rationale for statutes of limitations and the equities and public policy appropriate in such latent disease cases, this court believes a liberal interpretation of the time of accrual is appropriate in this and all actions alleging the infliction of bodily injury which only manifests itself at a point subsequent to the alleged negligent conduct of defendant.

Having determined that plaintiff's cause "arose" at some time after his exposure to asbestos, it remains to formulate the appropriate rule of accrual. In doing so, this court has the benefit of the many other decisions reached in

similar cases in other jurisdictions.[10] Moreover, we are instructed by the General Assembly which in its 1980 amendment adopted a "discovery rule" defining a cause to arise at discovery of the injury and discovery of the cause thereof. In the interest of uniform treatment of all asbestos-related bodily injury claims, the rule we adopt today should contain equivalent standards.

In *Melnyk, supra,* this court adopted a "discovery rule" tolling the statute of limitations in medical malpractice cases where a patient discovers a surgeon has negligently left foreign bodies inside his body during surgery. Again, this is a two-part rule, requiring both discovery of the foreign body and the cause thereof. We find latent disease analogous to a hidden instrument left in the body of an unsuspecting patient, and believe a similar rule should apply to each.

An examination of the better-reasoned cases decided in other jurisdictions, precedent by this court and the General Assembly's amendment to R.C. 2305.10 leads us to formulate the following "discovery rule" of accrual for bodily injury actions under R.C. 2305.10:

When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first.

Applying this "discovery rule" to the instant case, it is apparent that the action was not extinguished under the unamended statute of limitations. Accordingly, the amended statute of limitations, adopting this "discovery rule" for asbestos claims, is applicable to plaintiff's claim. Since plaintiff brought his action within two years of being informed by competent medical authority that he had been injured by exposure to asbestos, the action was timely brought. Therefore, the cause is remanded for further proceedings on the merits at the trial court level.

*Judgment accordingly.*

CELEBREZZE, C.J., SWEENEY and COOK, JJ., concur.

W. BROWN, J., concurs in the syllabus and judgment only.

HOLMES, J., concurs in paragraph two of the syllabus and judgment only.

LOCHER, J., concurs in judgment only.

COOK, J., of the Eleventh Appellate District, sitting by assignment.

---

[10] We find particularly persuasive the well-reasoned decision of the New Hampshire Supreme Court in *Raymond* v. *Eli Lilly & Co., supra,* written by Chief Justice Kenison.

LOCHER, J., concurring in the judgment only. I agree with the judgment in this case — reverse and remand to the trial court. I also agree with the fundamental rule of law stated by the majority: We should construe R.C. 2305.10 in light of the "discovery rule," rather than the "last exposure rule."

I would, however, recommend the following as a syllabus:

1. Squamous cell carcinoma of the larynx caused by exposure to asbestos is a form of "bodily injury" for purposes of R.C. 2305.10. (R.C. 2305.10, construed.)

2. In a cause of action alleging squamous cell carcinoma of the larynx caused by exposure to asbestos, the running of R.C. 2305.10 is tolled until the plaintiff is informed, by competent medical authority, or should have become aware, by the exercise of reasonable diligence, of the injury.

Accordingly, I concur in the judgment of reversal and remand for consideration of the motion for summary judgment in light of the "discovery rule."