897 F.2d 529
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wilfred HILL, Edna Hill, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION; General Motors Corporation,
Inland Division; Mobay Chemical Corporation; BASF
Wyandotte Corporation; Allied Chemical Corp.; E.I. Dupont
De Nemours & Co.; Dow Chemical Company; Bay-Chem
Corporation; and Union Carbide Corporation, Defendants-Appellees.
 No. 88-3588.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1990.
 
 Before KRUPANSKY and RYAN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, proceeding pro se, appeal the district court's dismissal, without prejudice, of their diversity tort action for failure to prosecute. We affirm.
 
 I.
 
 2
 Plaintiff Wilfred Hill ("Hill") worked for defendant General Motors Corporation, Inland Division ("Inland") as a millwright at Inland's Vandalia plant near Dayton, Ohio between 1973 and 1980. About March of 1980, Hill went on medical leave from Inland after being diagnosed as suffering an asthmatic condition due to exposure to toluene diisocyanate (TDI). With the exception of one day, December 20, 1982, Hill has not since worked at Inland.
 
 
 3
 On December 20, 1983, Hill and his wife, alleging diversity jurisdiction, sued Inland and its parent, General Motors Corporation ("GMC"), along with a number of TDI manufacturers. Plaintiffs' complaint initially raised only intentional tort claims but was later amended to allege negligence, strict liability, and breach of warranty on the part of defendants who allegedly exposed Hill to TDI and other chemicals. Plaintiffs sought compensatory and punitive damages totalling more than $30 million.
 
 
 4
 In February of 1984, GMC responded to the complaint by filing a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment on the grounds that plaintiffs' complaint was time-barred and that plaintiffs were estopped from bringing the action because Hill had applied for and received workers' compensation benefits. In April 1985, GMC's motion was sustained in part and overruled in part. The court held that because plaintiffs' claims against GMC alleged intentional torts, Hill's application for and receipt of a workers' compensation award did not preclude the action against GMC. But the court further held that plaintiffs' claims were time-barred under Ohio's two-year statute of limitations, Ohio Rev.Code Sec. 2305.10, except to the extent plaintiff claimed damages arising from his last exposure to TDI on his one-day return to work on December 20, 1982.[1]
 
 
 5
 On January 15, 1986, the district court entered an order scheduling trial and other matters. The scheduling order set a trial date of January 5, 1987 and established discovery deadlines, including June 9, 1986, by which time plaintiffs were to identify their expert witnesses and provide defendants with reports by those experts. Plaintiffs did not object to this order, but never provided the experts' reports. By June 9, they filed only a list of their expert witnesses.
 
 
 6
 A United States magistrate thereafter issued a renewed order to file experts' reports. Plaintiffs claimed such a requirement would impose upon them an undue financial burden but, on July 25, 1986, after conducting a hearing on the matter, the magistrate reissued his order requiring plaintiffs to provide the reports. The magistrate reasoned that since plaintiffs could afford to bring the many experts they had listed to their trial, they surely could afford to submit reports of what their experts would say, and noted that plaintiffs' counsel had formerly made no objection to producing the reports. Moreover, the magistrate stated:
 
 
 7
 The Court further finds that the failure of Plaintiffs' counsel to obtain such reports has substantially impeded the discovery scheduling in this case. In particular, Defendants cannot determine which Plaintiffs' experts they need to depose until they have seen the reports which have not yet been produced and as to which Plaintiffs' counsel is unable to offer the Court, even now, a date when they will be ready.
 
 
 8
 The magistrate nonetheless denied defendants' motion for involuntary dismissal, held their motion for witness preclusion in abeyance, and granted plaintiffs an extension until August 15, 1986 to provide the reports.
 
 
 9
 On August 4, 1986, plaintiffs filed a motion to disqualify the magistrate under 28 U.S.C. Secs. 144 and 455, alleging "bias and prejudice." The magistrate responded on August 7, 1986 by denying this motion and ordering plaintiffs' counsel to show cause why he should not be sanctioned under Fed.R.Civ.P. 11 for filing the disqualification motion. Among the reasons for the magistrate's show cause order were allegations by plaintiffs' counsel that the magistrate's father was involved in an ongoing business relationship with Inland, when in fact the magistrate's father had died in 1977, and that the magistrate had some financial interest in Inland although available public records disclosed no such interest.
 
 
 10
 Thereafter, defendants moved for sanctions against plaintiffs on the basis of their continued discovery noncompliance, pursuant to Fed.R.Civ.P. 37(b)(2). The magistrate granted this motion on September 27, 1986, finding plaintiffs' counsel's nonproduction of the experts' reports to be "nothing short of sheer defiance of this Court's orders." The magistrate declined to dismiss the action or preclude expert testimony as defendants had requested, but authorized defendants to subpoena and depose plaintiffs' listed experts with all costs to be borne by plaintiffs.
 
 
 11
 In December 1986, the district court denied plaintiffs' various motions to set aside orders of the magistrate, and the court set a date for a show-cause hearing regarding Rule 11 sanctions of plaintiffs' counsel. On February 9, 1987, after a hearing, the magistrate denied defendants' motion to dismiss for failure to prosecute and granted plaintiffs' request for 120 days to find new counsel. The magistrate's order stated:
 
 
 12
 Unless substitute counsel has been obtained and entered his or her appearance in accordance with this Entry by the 120th day after the date of this Entry, [this action] will be dismissed for want of prosecution. (120 days is the maximum amount of time requested by any party for this purpose; all parties agreed it was a fair amount of time.)
 
 
 13
 After plaintiffs were unable to obtain new counsel, the magistrate, on June 10, 1987, issued a report recommending dismissal of the action for failure to prosecute. On June 18, 1987, however, the magistrate vacated his report of June 10 and granted plaintiffs until July 15, 1987 to find new counsel. Plaintiffs were unsuccessful in their attempts to obtain new counsel and did not request a further extension of time. On August 7, 1987, the magistrate recommended that plaintiffs' action be dismissed, without prejudice, for failure to prosecute. Although the magistrate recommended that the dismissal be without prejudice, he also recommended that plaintiffs' right to refile the action be conditioned upon plaintiffs' payment of defendants' costs. In an order dated May 31, 1988, the district court adopted the magistrate's recommendation and dismissed the action. Plaintiffs appealed from the district court's rulings generally.
 
 II.
 
 14
 Federal courts are authorized to dismiss actions for want of prosecution. In pertinent part, Fed.R.Civ.P. 41(b) states:
 
 
 15
 For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.
 
 
 16
 And, the Supreme Court has recognized that:
 
 
 17
 The authority of a court to dismiss sua sponte for lack of prosecution [with prejudice] has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
 
 
 18
 Link v. Wabash Railroad Co., 370 U.S. 626, 630-31, reh'g denied, 371 U.S. 873 (1962).[2] Although we must review a dismissal for failure to prosecute under an abuse of discretion standard, Link, 370 U.S. at 633, we recognize that:
 
 
 19
 [t]he dismissal of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing "a clear record of delay or contumacious conduct by the plaintiff."
 
 
 20
 Carter v. City of Memphis, 636 F.2d 159, 161 (6th Cir.1980) (quoting Silas v. Sears, Roebuck & Co., Inc., 586 F.2d 382, 385 (5th Cir.1978)). We now conclude that the district court did not abuse its discretion in adopting the magistrate's report recommending that this case be dismissed for plaintiffs' failure to prosecute.
 
 
 21
 In this case, there is "a clear record of delay or contumacious conduct" justifying the magistrate's and district court's determination that the action should be dismissed for failure to prosecute. Plaintiffs' counsel never complied with the district court's discovery order to provide reports of expert witnesses, despite repeated orders, and an extension of the time period to do so. As a result, discovery in the case came to a standstill. In response to the magistrate's final order to provide experts' reports, plaintiffs' counsel filed a motion to disqualify the magistrate which, assessed in a most favorable light, can only be described as baseless. It appears that ultimately defendants had to incur the cost of deposing plaintiffs' experts, for which, so far as the record shows, defendants have never been reimbursed. After plaintiffs' counsel withdrew from the case, plaintiffs requested, and were granted, 120 days to obtain new counsel. When they did not obtain new counsel within this period, the magistrate granted plaintiffs 30 more days to obtain counsel. Upon the expiration of this period, plaintiffs still had neither obtained counsel nor requested a further extension of time to do so. That plaintiffs' prior counsel is responsible for most, if not all, of the dilatory and arguably contumacious behavior does not render the district court's dismissal of the action an abuse of discretion. In Link, the Supreme Court rejected such an argument:
 
 
 22
 There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."
 
 
 23
 Link, 370 U.S. at 633-34 (citation omitted).
 
 III.
 
 24
 In the most general way, plaintiffs further ask us "to review this case in it's [sic] entirety." They seek to reverse the district court's ruling that all of their claims, save that relating to Hill's alleged December 20, 1982 TDI exposure, are barred by Ohio Rev.Code Sec. 2305.10's two-year statute of limitations. They rely upon Ohio Rev.Code Sec. 4123. They broadly allege errors by the district court in connection with the above described history of discovery related orders.
 
 
 25
 We have reviewed the record in its entirety and conclude that the district court did not err in dismissing the plaintiffs' case.
 
 IV.
 
 26
 For the foregoing reasons, the district court's decision is AFFIRMED.
 
 
 
 [1]
 In its statute of limitations holding, the district court applied the Ohio "discovery rule" for accrual of an action. O'Stricker v. Jim Walters Corp., 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). Because the court found that Hill had discovered his injuries and their alleged cause in 1980--more than three years before plaintiffs filed their complaint--it held that plaintiffs' claims based on defendants' alleged conduct from 1973-1980 were time-barred under Ohio's two-year statute of limitations
 
 
 [2]
 In this case, the dismissal was without prejudice; thus, it was on its face a less severe sanction than the authorized under Rule 41(b) and Link. At the same time, in light of the conditions imposed on plaintiffs' refiling of the action--including payment of prior discovery costs incurred by defendants--and the statute of limitations, it appears likely that if the dismissal is affirmed, plaintiffs will be effectively barred from refiling the action