a voidable transfer under § 547(b) of the Bankruptcy Code.

Clarification of the procedures and timing valuation is found in the following analysis:

> It should be noted, however, that while this comparison of what the transferee actually received against what the transferee would actually receive in Chapter 7 has reference to the time of bankruptcy, rather than the time of the preferential transfer, *it is the time of transfer that governs the valuation of property for purposes of determining the insolvency element of a preference.*

*Bankruptcy Service, Lawyers Edition* § 6:216 (1985) (footnote omitted) (emphasis added).

To this same effect *see Matter of Abramson,* 715 F.2d 934 (5th Cir.1983):

> *Palmer Clay Products* holds that the preferential effect of a payment to a creditor is to be determined from the perspective of the date of the filing of bankruptcy. The value of the asset transferred ... is its value at the time of transfer.

*Id.* at 939 n. 9 (citation omitted).

Because both the bankruptcy court and the district court reached the correct result, although without an altogether clear explanation of the process utilized, we AFFIRM the judgment for plaintiff-appellee.

**Margaret CACCIACARNE; Joseph Cacciacarne, Plaintiffs–Appellees,**

v.

**G.D. SEARLE & CO., Defendant–Appellant.**

No. 89–3900.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1990.

Decided July 19, 1990.

Rehearing Denied Aug. 21, 1990.

Charles Kampinski (argued), Cleveland, Ohio, for plaintiffs-appellees.

Irene C. Keyse–Walker (argued), Robert C. Tucker, Arter & Hadden, Cleveland, Ohio, for defendant-appellant.

Before MERRITT, Chief Judge, KEITH and JONES, Circuit Judges.

MERRITT, Chief Judge.

This is a products liability diversity case in which the District Court has certified the question to this Court of when plaintiffs' cause of action accrued. Because we believe the District Court was correct in determining that the statute of limitations does not bar this action, we affirm.

## I.

Plaintiff Margaret Cacciacarne had a Cu–7 IUD, which was manufactured by Searle, inserted in 1975. She had another IUD inserted three years later, but because she experienced pain the device was removed. In 1984 when plaintiff and her husband had difficulty conceiving a child, plaintiff saw her doctor who told her that her fallopian tubes were blocked and referred her to a specialist, Dr. Seiler. Dr. Seiler confirmed plaintiff's doctor's diagnosis and voiced a suspicion that the IUD might have been the cause. However, Dr. Seiler also suspected other possible causes such as hormonal problems or endometriosis. Dr. Seiler performed surgery a month later and informed plaintiff that the blockage had been cleared. Further discussion about the possible cause of the blockage did not take place.

In 1985, when further attempts at conception were not successful, plaintiff returned to Dr. Seiler. He discovered that one of plaintiff's tubes was still blocked and recommended further testing. Because plaintiff and her husband were moving, she consulted another doctor, Dr. Schmidt, in October 1985. After examining plaintiff, Dr. Schmidt recommended artificial insemination. Six months later in April 1986 when plaintiff was still not pregnant, Dr. Schmidt informed plaintiff that despite the fact that one tube was not blocked she would not be able to become pregnant. He also told plaintiff that the IUD was the most likely cause.

Plaintiffs filed suit in state court in April 1988 and defendant removed to federal court. Defendant then moved for summary judgment on the ground that plaintiff's claim was barred by Ohio's two-year statute of limitations. The District Court denied defendant's motion for summary judgment finding that plaintiff's cause of action accrued in April 1986 when she fully realized she would not be able to conceive. After reconsideration the District Court vacated its order denying summary judgment and certified the question for interlocutory appeal.

## II.

Ohio Rev.Code § 2305.10 provides in relevant part:

An action for bodily injury ... shall be brought within two years after the cause thereof arose.

For purposes of this section, a cause of action for bodily injury ... arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date of which, by the exercise of reasonable diligence, he should have become aware that he had been injured ... whichever date occurs first.

Both parties agree that § 2305.10 is the applicable statute of limitations. There are two lines of cases out of the Ohio Supreme Court that set out tests for determining when a plaintiff's cause of action accrues. One line of cases concerns products liability actions, and the other concerns medical malpractice cases.

In *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983), using the language from § 2305.10, the Ohio Supreme Court held that a plaintiff must bring his action within two years of either the date he was informed by competent medical authority that he had been injured, or the date he should have discovered the injury. *O'Stricker*, 447 N.E.2d at 732; *see also Harper v. Eli Lilly & Co.*, 575 F.Supp. 1359 (N.D.Ohio 1983) (court used *O'Stricker* test to determine that daughters of women who took DES not required to bring suit until they were informed DES probably caused their injuries). In *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 467 N.E.2d 1378 (1983), the Ohio Court of Appeals elaborated on the *O'Stricker* test and held that a plaintiff must know or reasonably should have known that his injury was proximately caused by defendant. *Viock*, 467 N.E.2d at 1384.

For medical malpractice cases, the Ohio Supreme Court formulated a three-prong test to be applied in determining when causes of action accrue in *Hershberger v. Akron City Hospital*, 34 Ohio St.3d 1, 516 N.E.2d 204 (1987). The test is as follows:

When the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation; whether the injured party was aware, or

should have been aware that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition.

*Hershberger*, 516 N.E.2d at 208.

The court streamlined the *Hershberger* rule in *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989) and formulated the "cognizable event" test.

[W]e now hold that the "extent and seriousness of his condition" language of the test set forth in *Hershberger* ... requires that there be an occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.

*Allenius*, 538 N.E.2d at 96; *see also Herr v. Robinson Memorial Hosp.*, 49 Ohio St.3d 6, 550 N.E.2d 159 (1990) (court employed "cognizable event" test).

Applying either the *O'Stricker* test or the *Allenius* "cognizable event" test, we hold that plaintiff's cause of action did not accrue until Dr. Schmidt informed her she would not be able to conceive. Prior to that time there was no certainty about plaintiff's condition, or the cause of her condition. The nature of the problem was unclear. The precise question is whether Dr. Seiler's statement to plaintiff that the IUD might be the cause of her tubal blockage was enough to put her "on notice of the need to pursue [her] possible remedies." *Allenius*, 538 N.E.2d at 96. Under *Allenius* in order for a cause of action to accrue a plaintiff does not have to realize the full extent of her injuries. It is undisputed that plaintiff thought the IUD might possibly have caused her problem. But her doctor did not know the cause. He did not rule out endometriosis or other possible causes. Because plaintiff's doctor did not know the cause, "it would be illogical to

hold [her] to a higher degree of knowledge than [her] ... physician[ ]." *Herr,* 550 N.E.2d at 162. This is especially true in light of the fact that a month later both plaintiff and her doctor believed she could conceive and that her tubes were no longer blocked.

Accordingly, we remand the case with instructions for the District Court to re-enter its order denying summary judgment for defendant. This case was not far enough along the scale of clarity and certainty of condition and cause to trigger the running of the statute until April 1986.