Plaintiff-appellants Donald R. and Brenda Crego appeal from a summary judgment rendered in favor of defendant-appellee Columbus Equipment Company. The Cregos contend that their claim of strict product liability against CEC, based on R.C. 2307.78(B), did not accrue until they became aware, in July, 1996, that the manufacturer of the defective product was insolvent. The Cregos also contend that even if the statute of limitations began running on the date of Mr. Crego's injury, July 26, 1991, the statute of limitations should have been equitably tolled based on the representation of CEC's chief financial officer that, "[t]o the best of my knowledge, Plaintiffs will be able to enforce a judgment against the manufacturer of the product as there is no evidence or information indicating that the manufacturer is insolvent."
We conclude that the statutory restrictions placed on strict product liability causes of action against suppliers as set forth in R.C. 2307.78(B) did not change the elements of the underlying tortious act, and, therefore, the two-year statute of limitations for product liability causes of action, which starts to run on the date of injury or damage to property, is applicable to the Cregos' claims against CEC. We also find, however, that under certain circumstances, plaintiffs exercising due diligence to prosecute their claims under R.C. 2307.78(B)(2) may be left without an adequate remedy because the statute of limitations runs out on their claim against a supplier before the plaintiff knows, constructively or actually, that the manufacturer is insolvent. Accordingly, we recognize an equitable tolling of the statute of limitations for actions brought pursuant to R.C. 2307.78(B)(2) where the plaintiff investigates with due diligence the financial condition of the manufacturer and its successor corporations and abandons his efforts to prosecute a claim against the supplier based on the reasonable belief that the manufacturer or its successor corporations are solvent and able to satisfy judgment. Because we cannot determine from the record whether the Cregos made such an inquiry or formed such a reasonable belief, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
 I
On July 26, 1991, plaintiff-appellant Donald R. Crego, an employee of Butler Asphalt, suffered the amputation of several fingers on his right hand while operating a Madsen Drum Mixer. In 1969, Butler Asphalt had purchased the machine, which had been manufactured by defendant Baldwin-Lima-Hamilton Corporation, from Columbus Equipment Company.
On July 23, 1993, Mr. Crego and his wife, Brenda, brought an action against Butler Asphalt, Baldwin-Lima Hamilton Corporation (BLH), Columbus Equipment Company (CEC), Clark Equipment Company (Clark), Armour and Company, the Greyhound Corporation, the Dial Corporation, and others. In their complaint, the Cregos alleged that BLH placed the Madsen Drum Mixer, a product defective in manufacture, design, and warning, in the stream of commerce and that CEC ultimately sold the product to Butler Asphalt. The Cregos further alleged that Clark, Armour, Greyhound, and Dial were successor corporations of BLH.
While the complaint was pending, CEC filed a motion for summary judgment claiming protection as a supplier from strict product liability pursuant to R.C. 2307.78(B). In support of its motion, CEC attached an affidavit from its chief financial officer stating, "To the best of my knowledge, Plaintiffs will be able to enforce a judgment against the manufacturer of the product as there is no evidence or information indicating that the manufacturer is insolvent." In March, 1994, before the trial court could rule on CEC's motion, the Cregos voluntarily dismissed their complaint pursuant to Civ.R. 41(A).
In March, 1995, the Cregos refiled their complaint, naming BLH, Armour, Greyhound, and Dial as defendants, but omitting CEC from the lawsuit. In July, 1996, during a mediation conference, the Cregos discovered that BLH was an insolvent manufacturer and that none of the remaining solvent corporate defendants had assumed any liability for its products. The Cregos promptly amended their complaint to add CEC as a defendant. In October, 1996, the Cregos settled with BLH, Armour, Greyhound, and Dial, and the trial court dismissed them from the lawsuit. CEC moved for summary judgment, claiming that the statute of limitations period for product liability claims and the savings statute period had expired. In April, 1997, the trial court granted CEC's motion for summary judgment and dismissed CEC from the lawsuit.
From the summary judgment rendered against them, the Cregos appeal.
 II
The Cregos' First Assignment of Error is as follows:
 IT IS ERROR FOR A TRIAL COURT TO RULE THAT THE STATUTE OF LIMITATIONS IN A PRODUCTS LIABILITY ACTION EXPIRED BEFORE APPELLANTS WERE LEGALLY ENTITLED TO BRING THE CAUSE OF ACTION.
The Cregos maintain that they were deprived of their cause of action against CEC before they were entitled to bring the action, as a result of the limitation of supplier liability set forth in R.C. 2307.78(B). The Cregos argue that the statute, which limits the liability of a supplier as if it were the manufacturer of the product to certain specified circumstances, prevented them from bringing an action against CEC before the statute of limitations expired. The Cregos suggest that this court should interpret R.C.2307.78(B) as setting forth necessary elements for a product liability cause of action against a supplier and urge this court to find that the statute of limitations for an action against CEC did not accrue until they were first informed that BLH and its successor corporations were insolvent.
R.C. 2307.78(B) states as follows:
 A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code and any of the following applies:
 (1) The manufacturer of that product is not subject to judicial process in that state.
 (2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer.
 (3) The supplier owns or, when it supplied that product, owned, in whole or in part, the manufacturer of that product.
 (4) The supplier is owned or, when it supplied that product, was owned, in whole or in part, by the manufacturer of that product.
 (5) The supplier created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild that product or a component of that product.
 (6) The supplier altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier, and the alteration, modification, or failure to maintain that product rendered it defective.
 (7) The supplier marketed that product under its own label or trade name.
 (8) The supplier failed to respond timely and reasonably to a written request by or on behalf of the claimant to disclose to the claimant the name and address of the manufacturer of that product.
(Emphasis added.)
The Cregos contend that this statute sets forth essential elements for a strict product liability cause of action against a supplier and that the statute of limitations for the action does not accrue until the plaintiff discovers one of the enumerated circumstances. We disagree. The 1987 passage of the Ohio Civil Justice Reform Act limited common-law strict product liability actions against suppliers to a form of vicarious liability in the absence of the manufacturer. See O'Reilly Cody, Ohio Products Liability Manual (1992), Section 2.30, at 21. This statutory limitation, however, did not alter the underlying cause of action against a supplier for a defective product.
In their 1993 complaint, the Cregos alleged that Mr. Crego's injuries were caused by a defective Madsen Drum Mixer and that CEC, having placed the product in the stream of commerce, was liable for the claims alleged against BLH and its successor corporations. "In general, a cause of action exists from the time the wrongful act was committed." O'Stricker v. Jim Walter Corp.
(1983), 4 Ohio St.3d 84, 87, 4 OBR 335, 447 N.E.2d 727. In tort actions, a cause of action for damages does not arise until actual injury or damage to property ensues. Id., citing Kunz v. BuckeyeUnion Ins. Co. (1982), 1 Ohio St.3d 79, 1 OBR 117,437 N.E.2d 1194; Velotta v. Leo Petronzio Landscaping, Inc.
(1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147, paragraph two of the syllabus. The statute of limitations for a product liability action is set forth in R.C. 2305.10(A), which requires that the action "shall be brought within two years after the cause of action accrues." With several exceptions not relevant herein, a cause of action for product liability accrues when the injury or loss to property occurs. R.C. 2305.10(A); Cf. O'Stricker,4 Ohio St. 3d at 87. Both parties agree that Mr. Crego was injured on July 26, 1991, and that his injuries were immediately apparent to him. Accordingly, we must conclude that the statute of limitations began to run on the date of the injury, July 26, 1991.
The legislative restrictions placed on the strict product liability cause of action set forth in R.C. 2307.78(B) do not alter the substance of the "wrongful act" from which the aggrieved party suffered. See O'Stricker, 4 Ohio St.3d at 87. Mr. Crego sustained his injury while operating the Madsen Drum Mixer on July 26, 1991, and the alleged tort would have been complete on that day as to both the manufacturer and the supplier. While R.C.2307.78(B) restricts the Cregos' ability to sue CEC on a strict product liability theory, the enumerated circumstances set forth in the statutory provision do not constitute elements of a tort separate and apart from the tort of strict product liability that was alleged against the manufacturer. The wrongful act is the same. Accordingly, the statute of limitations for a product liability tort advanced against a supplier is the same as that advanced against a manufacturer, two years from the date of injury as set forth in R.C. 2305.10(A).
The Cregos advance several equitable arguments in support of revising the statute of limitations for strict product liability actions against suppliers; we will address those equitable concerns in response to the Cregos' Second Assignment of Error.
The Cregos' First Assignment of Error is overruled.
 III
The Cregos' Second Assignment of Error is as follows:
 IT IS ERROR FOR A TRIAL COURT TO ALLOW A SUPPLIER TO ASSERT THE STATUTE OF LIMITATIONS AS A DEFENSE WHERE THE SUPPLIER HAS INVOKED THE PROTECTION OF 2307.78(B) BASED UPON STATEMENTS WHICH LATER PROVE TO BE FALSE.
The Cregos contend that the statute of limitations should be equitably tolled based on the affidavit attached to CEC's first motion for summary judgment filed in March of 1994 in which CEC's chief financial officer stated, "To the best of my knowledge, Plaintiffs will be able to enforce a judgment against the manufacturer of the product as there is no evidence or information indicating that the manufacturer is insolvent." The Cregos contend that this statement led them to believe that the manufacturer was solvent, which required them to voluntarily dismiss their lawsuit and refile their complaint, omitting CEC as a defendant.
CEC argues that the Cregos could not reasonably have relied upon its chief financial officer's affidavit as evidence of BLH's solvency. CEC contends that the language contained in the affidavit expressly discounted CEC's knowledge of BLH's solvency. Further, CEC contends that the Cregos have a duty as plaintiffs to diligently investigate material facts relating to their claim. Accordingly, CEC suggests that the Cregos' failure to diligently ascertain the financial status of BLH and its successors resulted in their failure to bring an action against CEC within the applicable statute of limitations period and the savings period set forth in R.C. 2305.19.
As a threshold matter, we agree with CEC's assertion that the Cregos have a duty diligently to investigate all material facts relating to their case. Plaintiffs, as proponents of the lawsuit, have the burden of proving their claims, and, as a consequence, have the corollary duty of diligently investigating the facts necessary to prove their claims during the discovery phase of their lawsuit. See Hervey v. Normandy Dev. Co. (1990), 66 Ohio App.3d 496,500, 585 N.E.2d 570 ("The investigation of this matter, and the identity of Champion as a potential defendant, should have occurred within two years of August 1982. That is when appellant became aware of her claim, and that is when the statutory investigation period for the particulars of her claim began.").
Given the Cregos' duty diligently to investigate the facts material to their claims, we are reluctant to accept their contention that CEC's affidavit caused them to believe that BLH was solvent. First, the Cregos must have understood that CEC was in no better position than themselves to ascertain the financial condition of BLH. This is analogous to real property cases in which courts have held that plaintiffs cannot rely upon the misrepresentations of defendants where the facts are equally available to both parties. See Traverse v. Long (1956), 165 Ohio St. 249,252, 59 O.O. 325, 326-327, 135 N.E.2d 256, 259; Noth v.Wynn (1988), 59 Ohio App.3d 65, 67, 571 N.E.2d 446, 449. Second, the language chosen by the chief financial officer in his affidavit — "To the best of my knowledge, Plaintiffs will be able to enforce a judgment against the manufacturer of the product as there is no evidence or information indicating that the manufacturer is insolvent" — stops short of an unambiguous declaration that the manufacturer is solvent, thereby giving the Cregos an indication that CEC lacked superior knowledge of BLH's financial condition.
In order to sustain a strict product liability cause of action against CEC, the Cregos were required, pursuant to R.C.2307.78(B), to show that one of the enumerated circumstances set forth in the provision was present. In proving their case, the Cregos had the burden of diligently investigating whether or not BLH and its successor corporations were solvent. Accordingly, we cannot permit the Cregos to rely on CEC's affidavit as proof of their diligent investigation of BLH's financial condition.
Despite this finding, we are still left with the question of whether the statute of limitations for an action brought pursuant to R.C. 2307.78(B)(2) should be equitably tolled where the plaintiffs reasonably believe that the manufacturer is solvent, only to discover later that the manufacturer was, or subsequently became, insolvent and unable to satisfy judgment. This question was recognized by the American Law Institute in its proposed final draft of its third restatement of the American Law Of Products Liability:
 To assure plaintiffs access to a responsible and solvent product seller or distributor, the statutes generally provide that the nonmanufacturing seller or distributer is immunized from strict liability only if: (1) the manufacturer is subject to the jurisdiction of the court of plaintiff's domicile; (2) the manufacturer is not, nor is likely to become, insolvent; and (3) a court determines that it is highly probable that the plaintiff will be able to enforce a judgment against the manufacturer.
 In connection with these statutes, two problems may need to be resolved to assure fairness to plaintiffs. First, as currently structured, the statutes typically impose upon the plaintiff the risk of insolvency of the manufacturer between the time an action is brought and the time a judgment can be enforced. If a nonmanufacturing seller or distributor is dismissed from an action at the outset when it appears that the manufacturer will be able to pay a judgment, and the manufacturer subsequently becomes insolvent and is unable to pay the judgment, the plaintiff may be left to suffer the loss uncompensated. One possible solution could be to toll the statute of limitations against nonmanufacturers so that they may be brought in if necessary.[1]
Proposed Final Draft: Restatement of the Law 3d, Torts: Products Liability (1997) 4, Section 1.
We agree with the American Law Institute that statutory provisions like R.C. 2307.78(B)(2) may prove unjust to plaintiffs where a manufacturer becomes insolvent after the supplier is dismissed, or where the plaintiff, after investigation with due diligence, reasonably believes the manufacturer is solvent and dismisses the supplier, only to discover later that the manufacturer is insolvent. Accordingly, we conclude that, in the interest of justice, the statute of limitations for a strict product liability cause of action against a supplier should be equitably tolled where the plaintiff, after investigation with due diligence, reasonably ascertains that the manufacturer is solvent and, as a result, ceases to prosecute his claim against the supplier. This tolling period continues until a reasonable plaintiff would be aware of the manufacturer's actual or pending insolvency. Once a reasonable plaintiff would become aware of the manufacturer's actual or pending insolvency, the statute of limitations with respect to the strict product liability claim against the supplier resumes running.
This court has recognized the use of equitable tolling in the past to prevent gross injustice to a plaintiff. See Bryant v. Doe
(1988), 50 Ohio App.3d 19, 23, 552 N.E.2d 671 (finding that plaintiff's reasonable reliance on defendant's misrepresentation could toll statute of limitations). The foundation for our application of the equitable tolling doctrine in this case is the investigation with due diligence by the plaintiff into the financial condition of the manufacturer, which would excuse his failure to prosecute claims against the supplier for reasons beyond his control. See Hervey, 66 Ohio App.3d at 500 (discussing a plaintiff's lack of control in discovering his cause of action). In order to benefit from the equitable tolling doctrine, the plaintiff must show that he exercised due diligence in ascertaining the financial condition of the manufacturer before abandoning his efforts to prosecute his claim under R.C.2307.78(B) against the supplier. By requiring a reasonable and diligent inquiry by the plaintiff, it is our intent to provide an incentive for plaintiffs to determine early in litigation whether they have any potential claims against suppliers, thereby promoting the underlying rationale for statutes of limitations.[2]
Applying these principles in the case before us, we cannot determine from the record whether or not the Cregos conducted an investigation with due diligence into the financial condition of BLH and its successor corporations before the two-year statute of limitations period and the one-year savings period expired. As we have already discussed, the Cregos' reliance on CEC's chief financial officer's affidavit does not, by itself, satisfy their duty to conduct a diligent inquiry.
According to the Cregos, they first learned of the insolvency of BLH and its successor corporations in July of 1996, during a mediation. The deposition of Peter J. Novak, vice president and general counsel for Dial Corporation, reveals that BLH had stopped conducting business in 1972 and had dissolved as a corporation in 1976. Novak testified that Armour had an ownership interest in BLH and sold the assets and liabilities of BLH's Construction Equipment Division, which manufactured the Madsen Drum Mixer, to Clark. As a term of the sale, Armour indemnified Clark for any liabilities arising from defective products produced by BLH. In 1983, Armour ceased doing business, but the company was officially merged with its parent corporation, Greyhound, in 1993 as a "housekeeping" matter. As a term of the merger, Greyhound only assumed those obligations of Armour that it was required by law to assume. In 1994 and 1995, Greyhound assumed two name changes, which eventually resulted in "Dial Corporation." According to Novak, Dial was not a successor corporation of BLH and never assumed the liability for BLH's products.
In March, 1996, Dial Corporation filed a motion for summary judgment in which it stated that it was a successor corporation of BLH and that it had acquired the former BLH Construction Equipment Division from Clark, but was not liable as a successor corporation of BLH. In May, 1996, the trial court denied Dial's motion after finding that there was a genuine issue of material fact as to whether Dial had assumed liability for BLH's defective products and whether Dial was a mere continuation of BLH's business. The Cregos claim that during the July of 1996 mediation, they were informed by Dial that it had made two misrepresentations of fact: (1) Dial never had a business relationship with Clark; (2) Dial was not a successor corporation to any of the other named defendants in the lawsuit. Based on this new information, the trial court granted the Cregos' motion to amend their complaint and to name CEC as a defendant.
Based on these facts, there is a genuine issue whether the Cregos reasonably believed that BLH, or more likely, a successor corporation, was solvent and capable of satisfying a judgment. In order to sustain an action pursuant to R.C. 2307.78(B)(2), the Cregos would have to show that both the manufacturer, BLH, and its successor corporations were insolvent. See Ungaro v. Rosalco,Inc. (N.D.Ill. 1996), 948 F. Supp. 783, 785 (precluding plaintiff from applying "Illinois Distributor Statute" and suing supplier on strict product liability cause of action where defunct manufacturer had merged with solvent successor corporation). The representations made in support of Dial's motion for summary judgment suggest that the Cregos had a reasonable basis for believing that Dial was a solvent successor corporation of BLH. However, it is the province of the trial court to make the factual determination whether the Cregos made an investigation with due diligence into the financial condition of BLH and its successor corporations and had a reasonable basis for believing that BLH or its successors were solvent before the statute of limitations period and the savings period expired.
In view of the foregoing, we reverse the judgment of the trial court and remand this cause for the trial court to determine the following: (1) whether the Cregos exercised due diligence in investigating the financial condition of BLH and its successor corporations before the expiration of the statute of limitations period and the savings period; (2) whether the information discovered by the Cregos would have led a reasonable person to believe that BLH or its successor corporations were solvent and able to satisfy judgment; and (3) whether the Cregos abandoned their efforts to prosecute their claim against CEC based on their reasonable belief that BLH or its successor corporations were solvent and able to satisfy judgment. If the trial court determines that the Cregos, after exercising due diligence, reasonably believed before the statute of limitations period and savings period expired that BLH or its successor corporations were solvent and abandoned their efforts to prosecute their claims against CEC as a result, then the trial court shall equitably toll the statute of limitations, including the savings period, from the date that the Cregos had a reasonable basis for believing that BLH or its successors were solvent until the date that a reasonable plaintiff would have known that BLH and its successors were insolvent, and determine the timeliness of the Cregos' claims against CEC accordingly. Based upon the record before us, there is a genuine issue of material fact as to whether the statute of limitations ran out on the Cregos' claim against the supplier.
The Cregos' Second Assignment of Error is sustained.
 IV
The Cregos' Second Assignment of Error having been sustained, and their First Assignment of Error having been overruled, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Claudia R. Eklund
Robert D. Erney
Hon. Jeffrey Froelich
[1] The second problem identified by the American Law Institute is not relevant to the case before us.
[2] "The rationale underlying statutes of limitations is fourfold: to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases." (Citations omitted.) O'Stricker, 4 Ohio St.3d at 88.