[Cite as *Lewicki v. Grange Ins. Co.*, 2023-Ohio-4544.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

BRUCE LEWICKI,                          :

    Plaintiff-Appellant,          :
                                No. 112705

    v.                            :

GRANGE INSURANCE COMPANY,
ET AL.,                                 :

    Defendants-Appellees.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  December 14, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-960540

---

### *Appearances:*

John H. West., Co., L.P.A., and John H. West, *for appellant*.

Gallagher, Gams, Tallan, Barnes & Littrell L.L.P., James R. Gallagher; and Andrew J. Kielkopf, *for appellee* Grange Insurance Company.

Mazanec, Raskin & Ryder Co., L.P.A., Joseph F. Nicholas, Jr., Frank H. Scialdone, and Terence L. Williams, *for appellees* Charles Zavagno and Universal Insurance Company, Inc. dba Zavagno Insurance Agency.

MARY J. BOYLE, J.:

{¶ 1}　Plaintiff-appellant, Bruce Lewicki ("Bruce"), appeals the trial court's granting of defendants-appellees, Grange Insurance Company ("Grange"), Charles Zavagno ("Zavagno"), and Universal Insurance Company, Inc. dba Zavagno Insurance Agency's ("Universal") (collectively, "appellees"), motions for summary judgment, raising the following assignments of error for review:

> **Assignment of Error I:**　The trial court erred and abused its discretion by granting summary judgment in favor of [Grange].

> **Assignment of Error II:**　The trial court erred and abused its discretion by granting summary judgment in favor of each of the appellees, Grange, Zavagno, and Universal.

After careful review of the record and relevant caselaw, we affirm.

## I.　Facts and Procedural History

{¶ 2}　This appeal stems from a lawsuit filed in March 2022 by Bruce against Grange, an insurance company; Universal, an insurance agency; and Zavagno, a licensed insurance agent, challenging the denial of an insurance claim following a house fire at 5502 Charles Avenue in Parma ("Property").　The complaint asserted claims for breach of contract, breach of implied contract, bad faith, breach of fiduciary duty, fraud, negligence, detrimental reliance, and unjust enrichment. Bruce alleged that Grange and Universal were liable pursuant to the doctrines of vicarious liability and respondeat superior.　Bruce sought compensatory damages, punitive damages, attorney fees, interest, and costs.　Zavagno and Universal jointly filed an answer while Grange filed a separate answer.　In their respective responsive

pleadings, the appellees asserted numerous affirmative defenses, including that Bruce's claims were barred by the applicable statute of limitations. The relevant facts and circumstances surrounding Bruce's lawsuit are as follows.

{¶ 3} According to Bruce, he and his wife had gone to Zavagno for their insurance needs for many years. Zavagno testified that he worked as a sales manager for Universal, an insurance agency he started with his wife that wrote automobile, home, life, and small business lines of insurance for "mom and pop type" clientele. At the time of his deposition in October 2022, Zavagno had been an insurance agent for approximately 30 years. Zavagno testified that he was an independent agent, meaning he worked with multiple insurance companies, including Grange.

{¶ 4} Bruce's mother, Emma Lewicki ("Emma"), passed away in July 2014. According to a transfer on death deed filed in 2008, Emma was the titled owner of the Property, and her interest would transfer upon her death to Bruce and his brother, Bryan Lewicki. In an affidavit attached to his brief in opposition to Grange's motion for summary judgment, Bruce attested that he contacted Zavagno because he wanted to insure the Property. Bruce further averred that he advised Zavagno that his mother had recently died, she owned the Property, and the Property was titled in her name. According to Bruce, Zavagno took all of the relevant information related to obtaining the policy and told him that he was a licensed Grange agent, insurance for the Property could be obtained through Grange, he filled in all of the

information on Grange's form and inputted the information into Grange's computer software, and Bruce was approved for insurance.

{¶ 5} Bruce went to Zavagno's office to sign a completed Dwelling Fire Application in September 2014. Bruce attested that Zavagno explained that since the home was still in Emma's name, Bruce would sign as the "applicant" and Emma would be listed as the "insured" on the form and in the insurance policy. "Mr. Zavagno explained that this was the proper way to complete the paperwork because [Emma] was deceased and the home was still in her name." (Bruce's Affidavit, 11/04/22.)

{¶ 6} Zavagno provided the following explanation as to why Bruce signed the application for insurance naming Emma as the insured even though he understood that Emma was deceased:

> Because at the time [Bruce] informed me that he was in charge of the estate and that he was the power of attorney, which I know no longer exists, but he was in control. It was up to him. * * * And so the big question was whose name to put this policy in, because Bruce could not provide me — he mentioned transfer on death, but he could never provide me with anything that proved there was transfer on death. He could never come up with it. We waited days and days and days and everything in the auditor's page that I could see and the information that was available to me showed that this house, he had done nothing to move this house out of her name, so it needed to go in her name. And if I'm not mistaken till this day it still shows in Emma's name when you look it up.
>
> So based on what he was telling me versus what I could see, they've done nothing to move the house out of her name and into his name, him and his brother's name, which is what they were telling me.
>
> * * *

[W]e had Bruce sign, because he was acting on behalf of her estate. (Zavagno Dep. 10/27/22, tr. 48-49.)  Zavagno went on to explain that he was verbally told about the transfer on death deed but was never provided the physical document.  In fact, Zavagno testified that he had not seen the transfer on death deed until his deposition.  Zavagno stated:

> When I asked Bruce repeatedly, "Have you started probate?  Have you started an estate?  Have you done anything?"  He said, "No, we have not done anything at this point."  They have done nothing, exact words, nothing at this point.  Needed to get together with his brother.
>
> * * *
> So we were told by [the Cuyahoga County Recorder] that this has — even though [the transfer on death deed] exists, you still have to get it moved into your name, get the taxes moved into your name.  There are things that have to happen.  Even though this exists and, again, I'm not an attorney, I just — there's still things that have to happen in order to finish this.
>
> * * *
>
> [T]his is how this all came up is that I stopped Bruce and said, "We can't put this in your name."
>
> So it wasn't from Emma's name, now Bruce wanted it in his name.  So we then put brakes on and said, "I need documentation from you.  If you're telling me this exists, you got to get me something and you have to explain this to me."
>
> He couldn't explain it.  He didn't know.  All he said is, "This is all supposed to happen, [Zavagno]."
>
> "Okay.  Well that's not good enough."  Kept going back to the auditor's page going this is just in Emma's name.  There's nothing but in Emma's name.  And asked him again, "Did you start the estate?  Did you file probate?  Have you done anything?"
>
> "No, [Zavagno], we haven't done a thing.  I have to get together with my brother.  I have to get together with my brother."  This was the constant

answer.

(Zavagno Dep. 10/27/22, tr. 51-54.)  Ultimately, Zavagno determined the policy could not be in Bruce's name because he was not the titled owner of the Property according to county records and, instead, the policy had to be in Emma's name. Zavagno testified that was the decision he made

> based on the information they provided me.  And I point blanketly told them, "Based on what you're telling me here, this is how we need to write this policy.  You need to get your brother.  You need to get this information back.  This is not the end of the game here.  You have to do your homework."
>
> * * *
>
> I mean, everything showed — the tax records, the gas bill, the electric bill, everything, every document that we could find, okay, especially the — it wasn't going to them, everything was still solely in Emma's name.

(Zavagno Dep. 10/27/22, tr. 54-55.)  Zavagno further testified that he did some research on his own as to how to underwrite the policy and had a general conversation with other agents that were part of an insurance board he belonged to. Zavagno stated:

> I spent days looking at this.  There's what's called the guidelines.  And you go to the guidelines for a particular product.  Based on the dwelling fire guideline, there's nowhere it talks about an estate, a death.  It's even so broad it says that the property manager has a right to apply for insurance.  So at least Bruce was property manager and had been for many, many years.  So there was nothing that flagged me.  * * * Under this particular policy, it's trust, LLCs, commercial, anybody can apply and be insured under this type of policy with Grange.
>
> * * *

> Again, we're taught to follow the guidelines and the system will stop you if not. Again, there was no flag. There was nothing. * * * There was nothing that addresses this anywhere.

(Zavagno Dep. 10/27/22, tr. 122-123.)

{¶ 7} Bruce asserted that Zavagno told him that if there was an insurance claim, Bruce would be paid by Grange for the claim and that once the insurance premium was paid, Bruce would have insurance for the Property. According to Bruce, he knew Zavagno had been a licensed Ohio insurance agent for many years, had no reason to doubt what Zavagno told him, believed that Zavagno knew his business, and relied on Zavagno's representations.

{¶ 8} Ultimately, the application listed Emma as the insured and included her marital status, date of birth, social security number, and occupation under a section for the applicant's information. In that section, the applicant's "relationship" was identified as the "insured." Zavagno explained that this information was auto-populated by Grange's computer system, which only asked for the insured's information and not the applicant's. Bruce averred that he signed the application as the applicant; paid the insurance premium; and received an insurance policy from Grange. Zavagno explained that Bruce signed the application as the applicant because Bruce told him he was the executor of the estate. Zavagno stated, "He even asked me if he should sign his mother's name or not. And I said no. Not trying to hide anything here, you need to sign this. You're signing on behalf of your mother." (Zavagno Dep. 10/27/22, tr. 57.)

{¶ 9} The policy listed Emma as the only named insured on the declarations page. The policy defined "**you**" and "**your**" as the "[n]amed [i]nsured shown on the [d]eclarations [p]age." (Emphasis sic.) Relevant to this appeal, the policy defined "**[i]nsured**" as "the person or organization shown as the [n]amed [i]nsured on the [d]eclarations [p]age * * * and any additional insured shown on the [d]eclarations [p]age." (Emphasis sic.) The policy stated, "In return for **your** premium payment and **your** compliance with all of the provisions of this policy, we agree to provide insurance subject to all the terms of this policy." (Emphasis sic.) The policy further stated that Grange will "pay **you** unless another payee is named in the policy or is legally entitled to be paid." (Emphasis sic.) The policy also provided steps that "the **insured**" must take if a covered loss occurs and Grange "will not pay more than the insurable interest an **insured** has in the covered property * * * ." (Emphasis sic.)

{¶ 10} The policy stated, "**You** warrant that any statement **you** make in the application for this insurance is true. Any misstatement of fact **you** make in this application for this insurance will render this policy void from the inception date. If [Grange] void[s] **your** policy, the premium **you** have paid will be refunded." (Emphasis sic.) The policy also included a concealment of fraud provision contracting that the entire policy is void, either before or after a loss, if an insured intentionally concealed or misrepresented any material fact or circumstance, engaged in fraudulent conduct, or made false statements in any application or form submitted to Grange or with regard to any other aspect of the insurance policy, including its procurement. Finally, the policy provided that interest in the policy

may not be transferred without Grange's written consent. The policy listed three avenues for assignment in the event "**you** die" so long as there was coverage under the policy "at the time of death." (Emphasis sic.)

{¶ 11} Attached to Grange's motion for summary judgment was the affidavit of Charles William Cubbison, II ("Cubbison"), a personal lines underwriting manager for Grange. Therein, Cubbison stated that the policy renewed annually and every year a new declarations page was mailed to Emma at the Property, confirming she was the sole named insured on the policy. According to Cubbison, Grange was never advised that Emma was not alive. Bruce claimed that he paid Grange more than $4,700 for insurance premiums on the Property from 2014 through 2021. Zavagno testified that he received a commission from Grange when he wrote the policy in 2014 and each time the policy renewed. Zavagno testified that the policy was mistakenly put into his "dead file" after the application was approved in 2014, was on "auto pilot," and automatically renewed. (Zavagno Dep. 10/27/22, tr. 108-109.) Zavagno further testified that changes to certain coverage amounts in the policy's renewal declaration pages were caused by automatic adjustments due to "an inflation factor that is built-in based on construction materials * * *." (Zavagno Dep. 10/27/22, tr. 69.)

{¶ 12} In March 2021, a fire at the Property caused damage in an estimated amount over $63,000. Bruce attested that he and his wife contacted Zavagno and told him about the fire. Bruce expected that Grange would assess the damage and either pay him directly or pay contractors to repair the damage to the Property. Prior

to the fire, Zavagno testified that he was never informed by Grange that there were any problems with the insurance policy or that the contract was invalid or void. Zavagno further testified that he "started to get an inclination" that there was a problem with the policy after the fire because Grange would not respond to phone calls or inquiries about the status of the claim. (Zavagno Dep. 10/27/22, tr. 86.)

{¶ 13} In a letter dated August 2021, Grange notified Bruce's attorney that it did not know or have reason to know that Emma, who was identified as the individual applying for insurance in the September 2014 application, died prior to its submission. Grange stated that it was impossible for Emma to have entered into a contract for insurance and any policy issued in reliance on the application was void from inception. Grange further stated that even if it were presumed that a contract of insurance was entered into, the application identifying Emma as the applicant despite her death constituted a misrepresentation of material fact that resulted in the policy being void ab initio. Grange advised in the letter that it would refund the appropriate parties for all premiums paid in light of its discovery of this new information. According to Cubbison, Grange did, in fact, issue a full refund of all premium payments that it received in conjunction with the policy.

{¶ 14} Grange also sent a letter to Zavagno, advising him that Universal breached its agreements with Grange when it submitted the application requesting insurance for a person whom Universal knew was deceased. Zavagno testified: "I believe our first thing was when we got the rejection denial of claim is when I first was made aware. We got no heads up, we got no phone call, I got no — anybody

from Grange like to call us as an agent saying, hey, there's a problem here, let's discuss this. Let's work this out. Let's figure this out. Nothing. I got a letter denying [the] claim." (Zavagno Dep. 10/27/22, tr. 86.)

{¶ 15} Bruce attested:

31. I wouldn't have paid the premiums to Grange if I had thought that the policy was invalid or if I thought that Grange wasn't going to pay me if there was a loss on the property.

32. If either Mr. Zavagno or Grange had told me that there was a problem with writing the insurance policy in the way that Mr. Zavagno wrote it, I would have gone to another insurance company in order to get insurance or I would have made other arrangements for insurance or I would have taken whatever other steps were necessary to get insurance on the home.

33. I didn't take any other actions to get insurance on the [Property] because Mr. Zavagno advised me that I had insurance on the [Property] and because Grange issued a policy.

(Bruce's Affidavit, 11/04/22.)

{¶ 16} In August 2022, Grange filed a motion for summary judgment arguing that it never issued an insurance policy to Bruce to insure the Property; the contract was either a nullity because it was between Grange and Emma, a deceased individual, or void ab initio based on the misrepresentations of material fact by Bruce in the application; Bruce's claims were barred by the statute of limitations set forth in R.C. 2305.09; Bruce's bad-faith claim failed as a matter of law because he was not an insured person under the policy; Bruce's bad-faith claim further failed because he could not produce evidence that Grange lacked any reasonable basis to question the claim and had actual knowledge that it lacked any reasonable

justification to do so; equitable relief was unavailable to Bruce under the circumstances; and Grange was not liable for any alleged representations made to Bruce by his independent insurance agent, Zavagno, or for Zavagno's alleged negligence. Bruce filed a brief in opposition arguing his claims were not barred by the statute of limitations because each renewal of the insurance policy established a new contract; Zavagno was a Grange agent, making Grange vicariously liable for his actions; he did not make any misrepresentations to Zavagno or Grange; an implied contract existed between him and Grange; and Grange was barred from refusing to pay Bruce for the loss based on the doctrines of detrimental reliance and promissory estoppel. In response, Grange filed a reply, offering further support for all of the arguments raised in its motion for summary judgment.

{¶ 17} In December 2022, Zavagno and Universal filed a collective motion for summary judgment arguing that each of Bruce's claims were barred by the statute of limitations set forth in R.C. 2305.09 and, alternatively, Bruce's breach-of-fiduciary-duty claim failed as a matter of law because an ordinary business relationship existed; Bruce, Zavagno, and Universal did not have a contractual relationship; and Zavagno and Universal were Grange's agents, making Grange responsible for any alleged negligent acts. Bruce filed a brief in opposition. In addition to the alternative argument that his claim began to run with each renewal of the policy, Bruce asserted that his claims were not barred by the statute of limitations based on the discovery rule and delayed-damages rule and that the claims asserted were distinct and separate causes of action with their own specific

statutes of limitation. Bruce further argued that Zavagno had contractually agreed that he would obtain appropriate insurance for the Property and an implied contract existed between him and Zavagno; Zavagno was obligated to pay for his loss pursuant to the doctrines of detrimental reliance and promissory estoppel; Zavagno had a fiduciary relationship with him; and Zavagno was a Grange agent, making Grange vicariously liable for Zavagno's actions. Grange also filed a brief in partial opposition to Zavagno and Universal's motion for summary judgment arguing that at the time Zavagno was conducting his own investigation as to how he was going to prepare the application for the policy in question, he was acting as an agent for Bruce, not Grange. Grange further moved for leave to file an amended answer instanter to assert a crossclaim against Zavagno for indemnity if the trial court determined Bruce's negligence-related claims were not time-barred, and Grange was somehow vicariously liable. In response, Zavagno and Universal filed replies in support of their motion for summary judgment.

{¶ 18} In April 2023, the trial court granted Grange, Zavagno, and Universal's motions for summary judgment on all of Bruce's claims. Bruce now appeals the trial court's order.

## II. Law and Analysis

### A. Standard of Review: Motions for Summary Judgment

{¶ 19} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In a de novo review, the appellate court affords no deference to the trial court's

decision and independently reviews the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.); *Smathers v. Glass*, Slip Opinion No. 2022-Ohio-4595, ¶ 30.

{¶ 20} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Grafton* at 105.

{¶ 21} The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* "To accomplish this, the movant must be able to point to the evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id.* These include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Dresher* at 293.

{¶ 22} After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Am. Dental Ctr. v. Wunderle*, 8th Dist. Cuyahoga No. 62548, 1993 Ohio App. LEXIS 4437, 4 (Sept. 16, 1993), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This court has explained:

> "[T]he plain language of the summary judgment rule mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial."

(Citations omitted.) *Corradi v. Soclof*, 8th Dist. Cuyahoga No. 67586, 1995 Ohio App. LEXIS 2162, 6 (May 25, 1995), quoting *Toensing v. MK-Ferguson Co.*, 76 Ohio App.3d 826, 830, 603 N.E.2d 396 (8th Dist.1992), citing *Celotex Corp.* at 323-324.

{¶ 23} With these principles in mind, we consider whether the trial court's granting of appellees' motions for summary judgment was erroneous. We begin by addressing the second assignment of error since it determines the first assignment of error.

## B. Claims Against Zavagno and Universal

{¶ 24} In the second assignment of error, Bruce argues that the trial court erred by granting summary judgment in favor of Zavagno and Universal. Bruce argues that sufficient evidence was presented such that reasonable minds could conclude that Zavagno and Universal committed negligence; Zavagno committed fraud; Zavagno and Universal breached an implied contract; Zavagno breached his fiduciary duty to Bruce; and Zavagno and Universal were obligated to pay for his loss pursuant to the doctrine of detrimental reliance.[1] Bruce also argues that genuine issues of material fact were presented regarding the application of the statute of limitations. As noted by Zavagno and Universal, the primary issue to be addressed in the instant appeal is the applicability of the four-year statute of limitations proscribed by R.C. 2305.09(D) to Bruce's claims against them sounding in professional negligence.

---

[1] Bruce contends "that there are numerous material facts at issue such that none of the [a]ppellees are * * * entitled to summary judgment as to any of [his] causes of action." However, on appeal Bruce only challenges the granting of summary judgment for the specific causes of action listed in this section and the next for each of the parties, respectively. Based on our review of the complaint and appellant's brief, Bruce fails to set forth any law or argument regarding the following causes of action raised against the following appellees: breach of contract, bad faith, and unjust enrichment against all appellees; breach of fiduciary duty and fraud against Universal and Grange; negligence against Grange; and vicarious liability and respondeat superior against Universal. Consequently, Bruce has abandoned those claims. App.R. 12(A)(2); App.R. 16(A)(7); *Midland Funding LLC v. Hottenroth,* 2023-Ohio-923, 211 N.E.3d 797, ¶ 21 (8th Dist.), quoting *United States v. Johnson,* 440 F.3d 832, 845-846 (6th Cir.2006) ("'An appellant abandons all issues not raised and argued in its initial brief on appeal.'"); *Adena at Miami Bluffs Condo. Owners' Assn. v. Woodward,* 12th Dist. Warren No. CA2020-08-044, 2021-Ohio-3872, ¶ 22 (noting that appellant abandoned some of his claims by not referring to them at all in his appellate briefing); *E. Liverpool v. Columbiana Cty. Budget Comm.,* 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3 (argument not raised in the party's brief is deemed to be abandoned).

{¶ 25} R.C. 2305.09(D) provides a four-year statute-of-limitations period for torts not specifically covered by other sections of the Revised Code. "Statutes of limitations serve a gate-keeping function for courts by """(1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay — specifically, the difficulties of proof present in older cases.""" *Flagstar Bank, F.S.B. v. Airline Union's Mortg. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 7, quoting *Pratte v. Stewart*, 125 Ohio St.3d 473, 481, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 42, quoting *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10. Generally, a statute of limitations begins to run as soon as the injurious act complained of is perpetrated, even if the actual injury subsequently occurs. *LGR Realty, Inc. v. Frank & London Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 14, citing *Kerns v. Schoonmaker*, 4-Ohio-331 (1831), syllabus. There are two primary exceptions to this general rule. *Id.*, citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87, 447 N.E.2d 727 (1983), and *Flagstar* at ¶ 13. The Ohio Supreme Court explained:

> One exception to the general rule is the discovery rule, which provides that "[w]hen an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or by the exercise of reasonable diligence should have known, that he had been injured by the conduct of the defendant, for purposes of the statute of limitations." *O'Stricker* at paragraph two of the syllabus.

> The second exception to the general rule is the delayed-damage rule, which this court first adopted in *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St.2d 376, 433 N.E.2d 147 (1982). Under the delayed-damage rule, "where the wrongful conduct complained of is not

presently harmful, the cause of action does not accrue until actual damage occurs." *Id.* at 379.

*Id.* at ¶ 15-16.

{¶ 26} Ultimately, the parties argue about the applicability of two cases, *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79, 437 N.E.2d 1194 (1982) and *LGR*, in determining when the four-year statute of limitations on Bruce's professional-negligence claims, first asserted in 2022, began to run. Under the authority of *Kunz*, Bruce asks us to apply the discovery rule and delayed-damage rule to each cause of action and find that the statute of limitations began to run only after Grange refused to pay his claim in April 2021.

{¶ 27} In *Kunz*, the Ohio Supreme Court answered the following question: when insurance acquired by an agent for the insured is not as requested by the insured, when does a cause of action accrue for the failure to procure the coverage as requested? *Id.* at 80. There, appellants, the insureds, purchased insurance though the appellees, an insurance agent and insurance agency, for appellants' business equipment consisting primarily of construction machinery. *Id.* at 79. In 1969, appellees secured a policy written by an insurance company on a crane that provided "all risk" coverage. *Id.* Later that year, appellants wished to consolidate various individual policies on their equipment to a single omnibus policy. *Id.* The appellees presented the appellants with a consolidated policy in 1970 and the appellants believed that it provided the same "all risk" coverage that they formerly had. *Id.* The policy ran for three years and was renewed in 1973, when appellants

again assumed that the coverage was just as good as the pre-1970 individualized policies. *Id.*

{¶ 28} In January 1975, appellants increased their coverage on the crane, and, in April 1975, the crane was involved in a job-site accident. *Id.* Appellants were initially informed by the insurance company that the loss would be covered. *Id.* However, in June 1975, the insurance company denied the claim citing certain exclusionary provisions in the consolidated policy that had not been part of the pre-1970 insurance contract for the crane. *Id.*

{¶ 29} In April 1977, appellants filed suit against the insurance company and appellees, alleging that appellees failed to obtain the coverage requested or failed to disclose a change in coverage.[2] *Kunz*, 1 Ohio St.3d at 79, 437 N.E.2d 1194. Appellees filed a motion for summary judgment on the ground that appellants' claims sounded in professional negligence and were barred by the four-year statute of limitations contained in R.C. 2305.09(D). *Id.* The trial court granted the motion and the First District Court of Appeals affirmed without discussing when the cause of action accrued. *Id.* at 80.

{¶ 30} On appeal to the Ohio Supreme Court, the appellants urged the court to adopt the delayed-damage rule. *Id.* at 81. Relying on a case decided by the Alaska Supreme Court, the *Kunz* Court held that the cause of action did not accrue, and the

---

[2] The insurance company's motion to dismiss was granted by the trial court. Appellants did not appeal the trial court's granting of the motion. Therefore, the insurance company was not a party to the subsequent appeal.

statute of limitations did not begin to run until April 1975, the date of the job site accident involving the crane. In so holding, the court explained:

> [T]here was no invasion, or infringement upon or impairment of such interest until there had been a loss to appellants' equipment because until that even occurred such protection could avail appellants nothing. Their interest was in having protection when it was needed. * * * To adopt the position of the lower courts would in essence require an insured to consult legal counsel whenever he consolidated or renewed an insurance policy so as to avoid statute of limitations problems when a claim eventually arises.

*Id.* at 81-82.

{¶ 31} Conversely, the appellees here rely on *LGR,* as well as numerous cases leading up to its development, in support of their argument that Bruce's professional-negligence claims, first asserted in 2022, are time-barred because the four-year statute of limitations began to run when the insurance policy was issued in 2014 and expired in 2018. In *LGR,* 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, the Ohio Supreme Court addressed the issue of whether the delayed-damage rule is applicable to a cause of action for professional negligence related to the procurement of an insurance policy. *Id.* at ¶ 1. Ultimately, the *LGR* Court held that the delayed-damage rule did not apply, and the cause of action accrued on the date the policy was issued. *Id.*

{¶ 32} There, appellant, an insurance agency, procured a professional-liability insurance policy from an insurance company for appellee, a realty company, that was effective from May 2010 to May 2011. *Id.* at ¶ 2. A liability claim regarding certain property was made against the appellee within the policy period and appellee

made a claim against the policy. *Id.* at ¶ 3. In April 2011, the insurance company denied the claim on the basis of an exclusion provision in the policy regarding the property at issue. *Id.* In April 2015, appellee brought an action against appellant alleging that appellant had been negligent in failing to procure an appropriate professional-liability insurance policy and negligently misrepresented the coverage contained in the policy. *Id.* at ¶ 4. The trial court concluded that *Kunz* had been "eroded" by subsequent cases, declined to apply the delayed-damage rule, determined that appellee's cause of action accrued on the day the insurance policy went into effect in May 2010, and dismissed the complaint. *Id.* at ¶ 6. The Tenth District Court of Appeals reversed the trial court's judgment and applied the delayed-damage rule, finding that *Kunz* remained intact. *Id.* at ¶ 7.

{¶ 33} On appeal to the Ohio Supreme Court, appellant asserted that the delayed-damage rule enunciated in *Kunz* was abrogated by subsequent cases and, therefore, a cause of action for insurance agent or agency negligence accrues when the allegedly wrongful act was committed for the purposes of the four-year statute of limitations established by R.C. 2305.09(D). In its analysis of the appellant's proposition of law, the Ohio Supreme Court distinguished *Kunz* without explicitly overruling it, stating:

> While this case, like *Kunz*, involves the purchase of insurance, the factual similarities of the cases end there. [Here, appellees] purchased a professional-liability insurance policy, and when the policy was issued to [appellee], the specific-entity exclusion upon which [the insurance company] relied in denying the claim was contained in the policy. In *Kunz*, the insureds purchased a property insurance policy providing "all risk" coverage on a crane. When that individual policy

was consolidated into the omnibus policy, the insureds believed, incorrectly, that the "all risk" coverage continued.

*Id.* at ¶ 24.

{¶ 34} The *LGR* Court went on to emphasize the long-recognized general rule regarding statutes of limitations: "a statute of limitations begins to run when the injurious act is committed." *LGR,* 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, at ¶ 26, citing *O'Stricker*, 4 Ohio St.3d at 87, 447 N.E.2d 727, and *Flagstar*, 128 Ohio St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, at ¶ 13. The court reiterated that an exception to the general rule is only judicially created or recognized "in the narrow circumstances in which application of the general rule '"would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence."'" *Id.*, quoting *O'Stricker* at 87, quoting *Wyler v. Tripi*, 25 Ohio St.2d 164, 168, 267 N.E.2d 419 (1971). The Ohio Supreme Court then explicitly found that those narrow circumstances did not exist in *LGR* and determined that the cause of action accrued when the injury occurred, *i.e.*, when appellant issued to appellee the liability policy that specifically excluded coverage for claims related to services performed at the property. *Id.* at ¶ 27.

{¶ 35} In concluding that the four-year statute of limitations period began to run when appellant issued the insurance policy setting forth the specific entity exclusion, the court explained:

> If, as [appellee] argues, it was injured by the insurance policy containing the specific-entity-exclusion provision provided by

[appellant], then [appellee] was damaged the moment it entered into the contract and became obligated to pay a premium for a professional-liability insurance policy that was less than the coverage that it believed it would receive. Therefore, the harm to [appellee] was complete when [appellant] issued the insurance contract setting forth the specific-entity-exclusion provision.

*Id.* at ¶ 28. The court held that "the delayed-damage rule does not apply to a cause of action alleging negligent procurement of a professional-liability insurance policy or negligent misrepresentation of the terms of the policy when the policy at issue contains a provision specifically excluding the type of claim that the insured alleges it believed was covered by the policy." *Id.* at ¶ 31. The *LGR* Court's conclusion was in line with two prior Ohio Supreme Court decisions holding, "A cause of action for professional negligence accrues when the act is committed." *Flagstar* at ¶ 27, citing *Investors Reit One v. Jacobs,* 46 Ohio St.3d 176, 546 N.E.2d 206 (1989).

{¶ 36} Based on our extensive review of the record before us and applicable caselaw, we find *Kunz* to be distinguishable for the same reasons set forth in *LGR*. In his complaint, Bruce alleges that Zavagno and Universal negligently failed to procure the appropriate insurance on the Property. The application for insurance naming Emma as the insured and including Bruce's signature as the applicant was submitted by Zavagno and Universal to Grange in 2014. Grange then issued an insurance policy listing Emma as the only named insured. Bruce was not listed as an insured or a payee and was not otherwise mentioned anywhere in the insurance policy; Bruce's name only appears in the initial application in the form of the hand-written signature of the applicant. Bruce's status as an "applicant" does not fall

within the definitions of "you," "your," and "insured" as defined by the policy and Bruce does not argue that he fell within these definitions. Based on the explicit terms of the policy, it should have been immediately apparent to Bruce that he would not be paid for any loss. Furthermore, the terms of the policy are not reconcilable in light of the fact that "the insured" was deceased at the time the policy was issued, e.g., Emma, "the insured," could not have taken the steps listed if a covered loss occurred or warranted that any statement made in the application was true. Nor could interest in the policy be transferred because the Property was not covered under the policy at the time of Emma's death.

{¶ 37} Accordingly, we find that the statute of limitations began to accrue in 2014, when Zavagno and Universal's allegedly negligent act was committed and the insurance policy was issued, completing the harm. This purported act of professional negligence, which occurred in 2014, was merely perpetuated by the automatic renewal of the policy each year. Because the four-year statute of limitations expired in 2018 and Bruce's complaint was not filed until 2022, Bruce's professional-negligence claims against Zavagno and Universal are time-barred pursuant to *LGR*.

{¶ 38} We further find that the causes of action against Zavagno and Universal that Bruce raises on appeal all sound in professional negligence. The statute of limitations to be applied is determined from the essential ground or gist of the complaint. *Kunz*, 1 Ohio St.3d at 80-81, 437 N.E.2d 1194 (finding that the action was "roughly analogous to a malpractice action" and concluding that it was

grounded in tort rather than contract because "[t]he relationship between the parties * * * called for the performance of certain services by the insurance agent, and any breach thereof involved the agent's failure to secure the desired insurance coverage");[3] *Chateau Estate Homes v. Fifth Third Bank*, 2017-Ohio-6985, 95 N.E.3d 693 (1st Dist.) (finding R.C. 2305.09(D)'s four-year statute of limitations for tort claims was applicable to the entire action because the factual basis for the breach-of-contract claim asserted against an insurance broker was exactly the same as the factual basis for the asserted negligence claims); *Chernett Wasserman Yarger, L.L.C. v. ComScape Holding, Inc.*, 8th Dist. Cuyahoga No. 100907, 2014-Ohio-4214, ¶ 16 ("When considering whether a legal malpractice claim has been brought within the applicable statute of limitations, 'the crucial consideration is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded.' *Hunter v. Shenango Furnace Co.*, 38 Ohio St.3d 235, 237, 527 N.E.2d 871 (1988) * * *."). The alleged conduct underlying Bruce's fraud, breach-of-implied-contract, detrimental-reliance, and breach-of-fiduciary-duty claims against Zavagno and breach-of-implied-contract and detrimental-reliance claims against Universal essentially allege that Zavagno and Universal

---

[3] The issues posed in *Kunz* were two-fold: (1) whether the allegations in the insureds' complaint sounded in tort or contract and were governed by the statute of limitations set forth in R.C. 2305.09 or 2305.07, respectively, and (2) when does a cause of action accrue for an insurance agent's failure to procure insurance coverage as requested by the insured. *Id.* at 80. As discussed above, we find the disposition of the second issue to be distinguishable. However, *Kunz's* discussion of the first issue remains instructive to our analysis regarding whether the causes of action against Zavagno and Universal sound in professional negligence.

failed to procure or obtain appropriate insurance coverage on the Property. Therefore, these claims are simply restatements of the negligence claims and sound in tort. Accordingly, the four-year statute of limitations proscribed by R.C. 2305.09(D) applies.

{¶ 39} Because no genuine issue of material fact remains that Bruce's claims against Zavagno and Universal are time-barred pursuant to the statute of limitations set forth in R.C. 2305.09(D), we affirm the trial court's granting of Zavagno and Universal's motion for summary judgment.

### C. Claims Against Grange

{¶ 40} In the second assignment of error, Bruce also argues that sufficient evidence was presented for reasonable minds to conclude that Grange breached an implied contract and was obligated to pay for his loss pursuant to the doctrine of detrimental reliance. Bruce asserts that a valid implied contract was created whereby Zavagno and Universal were to obtain insurance on the Property and, because Zavagno and Universal were acting as agents of Grange, Grange is now bound by that implied contract to obtain insurance. Bruce concludes:

> Under Ohio law, once his mother pas[sed], [Bruce] was a part owner of the [Property] and he therefore could purchase insurance in his name on that home. [Bruce] intended to buy insurance from Gran[g]e, Zavagno and Universal intended to write a Grange policy for [Bruce], Grange intended to insure the home, [Bruce] paid consideration for the insurance every year. The only thing missing is that now, Grange is trying to renege on the deal.

Bruce fails to cite any legal authority in support of an implied contract under these circumstances.

{¶ 41} This court has held that when an appellant fails to cite to any legal authority for their claims, that failure allows this court to disregard their arguments. *Pinkney v. Salett*, 8th Dist. Cuyahoga No. 96130, 2011-Ohio-4121, ¶ 3, citing App.R. 12(A)(2); App.R. 16(A)(7); *see also State v. Martin*, 12th Dist. Warren No. CA99-01-003, 1999 Ohio App. LEXIS 3266 (July 12, 1999), citing *Meerhoff v. Huntington Mtge.* Co., 103 Ohio App.3d 164, 658 N.E.2d 1109 (3d Dist.1995); *Siemientkowski v. State Farm Ins.*, 8th Dist. Cuyahoga No. 85323, 2005-Ohio-4295. Afterall, "[a]ppellate courts are not advocates." *Taylor-Stephens v. Rite Aid of Ohio*, 8th Dist. Cuyahoga No. 106324, 2018-Ohio-4714, ¶ 121. The appellant, rather than the appellate court, bears the burden to construct the necessary legal arguments that support the designated assignments of error. *Doe v. Cuyahoga Cty. Community College*, 8th Dist. Cuyahoga No. 110590, 2022-Ohio-527, ¶ 26, citing *Taylor-Stephens*. "'If an argument exists that can support this assigned error, it is not this court's duty to root it out.'" *Id.*, quoting *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, 22 (May 6, 1998). Accordingly, we decline to review Bruce's claim that summary judgment was improper as to the implied-contract claim he asserted against Grange.

{¶ 42} In the first assignment of error, Bruce argues that Zavagno and Universal are agents of Grange, thereby making Grange vicariously liable for their actions based on the doctrine of respondeat superior. Because summary judgment was properly granted on the underlying claims challenged on appeal against Zavagno and Universal, Grange cannot be vicariously liable for any of those claims.

*See, e.g., Clawson v. Hts. Chiropractic Physicians, L.L.C.*, 170 Ohio St.3d 451, 2022-Ohio-4154, 214 N.E.3d 540 (holding a plaintiff could not prevail on a claim of chiropractic malpractice against a chiropractor's employer under the doctrine of respondeat superior when the expiration of the applicable statute of limitations extinguished the chiropractor's direct liability for the alleged malpractice); *Krause v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 70712, 1996 Ohio App. LEXIS 5784, 16 (Dec. 19, 1996) ("Under the doctrine of respondeat superior, without an underlying tort claim against an employee, a plaintiff has no claim against the employee's employer."), citing *Strock* v. *Pressnell*, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235 (1988) ("It is axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment."). Therefore, we need not consider Bruce's arguments that Zavagno and Universal are agents of Grange and, thus, Grange is vicariously liable under the doctrine of respondeat superior. For the same reason, Bruce's claim that Grange is responsible for his alleged determinantal reliance on Zavagno's alleged negligent advice also fails.

{¶ 43} Accordingly, we affirm the trial court's decision granting Grange's motion for summary judgment; no genuine issue of material fact remains as to Bruce's implied-contract, detrimental-reliance, and vicarious-liability/respondeat-superior claims against Grange. Having disposed of all of the arguments Bruce raises on appeal, we overrule the two assigned errors presented for our review.

## III. Conclusion

{¶ 44} We find that no genuine issues of material fact remain as to Bruce's negligence, fraud, breach-of-implied-contract, detrimental-reliance, and breach-of-fiduciary-duty claims against Zavagno; negligence, breach-of-implied-contract, and detrimental-reliance claims against Universal; and vicarious-liability/respondeat-superior, breach-of-implied-contract, and detrimental-reliance claims against Grange. Bruce's claims against Zavagno and Universal are time-barred pursuant to the statute of limitations set forth in R.C. 2305.09(D). Because summary judgment was properly granted on the underlying claims challenged on appeal against Zavagno and Universal, Grange cannot be vicariously liable for any of those claims under the doctrine of respondeat superior. For that same reason, Bruce's argument that Grange is responsible for his alleged determinantal reliance on Zavagno's alleged negligent advice also fails. Finally, Bruce failed to cite any legal authority or develop his argument that Grange is bound by an implied contract under the circumstances of this case.

{¶ 45} Accordingly, we affirm the trial court's granting of appellees' motions for summary judgment.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

ANITA LASTER MAYS, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR